**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

ARISSA PODRAZA, SUSAN COLBY, and JESSICA KELLER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

NOURISH, INC.,

Defendant.

Case No. 3:25-cv-50356

Honorable Iain D. Johnston

Honorable Margaret J. Schneider

**DEFENDANT NOURISH, INC.'S UNOPPOSED MOTION**
**TO VACATE ENTRY OF DEFAULT UNDER RULE 55(c)**

Defendant Nourish, Inc. ("Nourish")[1] files this Unopposed Motion to Vacate Entry of Default under Rule 55(c) (the "Unopposed Motion").[2]

## I. INTRODUCTION

Nourish asks the Court to vacate the Clerk's entry of default. Nourish is a start-up company. Amid a high volume of spam and without a formal process for routing mail and email, Nourish's CEO mistakenly believed that the registered agent's email, which he learned about in a Slack message, was spam. Once he learned otherwise, Nourish promptly retained legal counsel, contacted Plaintiffs' counsel, and prepared this Unopposed Motion within a week. Courts routinely lift Clerk's defaults under these circumstances.

---

[1] Nourish appears solely for the purpose of seeking to vacate the entry of default. By doing so, Nourish does not waive, and expressly preserves, all defenses available under Rule 12(b), including but not limited to the defense of lack of personal jurisdiction.

[2] Recognizing that default is a drastic remedy, Plaintiffs do not oppose the portions of this Unopposed Motion that (1) ask the Court to vacate the entry of default under Rule 55(c) of the Federal Rules of Civil Procedure (the "Rules"), and (2) ask the Court to vacate Plaintiffs' December 12, 2025 status report deadline. Nonetheless, Plaintiffs do not agree that the defenses set forth herein can ultimately succeed, and will vigorously oppose any Motion to Dismiss filed by Nourish.

Vacating the default accords with the lenient standard of Rule 55(c) and the Seventh Circuit's strong preference for resolving cases on the merits. Nourish's delayed response was an honest mistake, its corrective action was prompt, and it has meritorious defenses to each claim. And Plaintiffs do not oppose the relief sought. For these reasons, the Court should set aside the entry of default.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. The Clerk of Court has entered default under Rule 55(a), but the Court has not entered a default judgment.

Plaintiffs (two Illinois residents and one California resident) filed a putative nationwide Class Action Complaint (the "Complaint"). ECF No. 1. For the reasons explained below, Nourish inadvertently did not respond to the Complaint. Plaintiffs moved for entry of default under Rule 55(a), ECF No. 10, which the Clerk of Court entered on November 7, 2025, ECF No. 12. The Court ordered Plaintiffs' counsel to file a status report with the Court by December 12, 2025, indicating when they anticipate they will have gathered enough information to file a motion for default judgment. ECF No. 11. Both parties agree that this deadline should be vacated.

### B. Nourish inadvertently did not respond to the Complaint.

Nourish is a start-up that three friends co-founded in 2021 to address nutrition-related chronic disease. Ex. 1, Declaration of Aidan Dewar ("Decl.") ¶ 3. Nourish connects patients, dietitians, and insurance payers through a virtual care platform that makes it easy to access high-quality, insurance-covered dietitian care for nutrition-related conditions. *Id.*

Nourish receives a large amount of mail and email across various channels, and most of it is spam. *Id.* ¶ 4. As a start-up, Nourish does not yet have a formal, reliable process for screening and routing mail and email to the appropriate recipient. *Id.* A human resources employee at Nourish received an email from Nourish's registered agent about this lawsuit in September 2025.

*Id.* ¶ 5. In response, that employee sent a Slack message to Nourish's CEO, but the CEO did not realize that the referenced email was legal process. *Id.* ¶ 6. He thought it was spam. *Id.* On December 3, 2025, Nourish's CEO received an email from an employee relaying a question about this lawsuit. *Id.* ¶ 7. After receiving that email, Nourish's CEO realized the severity of the situation and promptly reached out to counsel for help. *Id.*

Nourish's CEO did not intend to ignore the lawsuit or any legal obligations. *Id.* ¶ 8. Instead, his failure to act upon the Slack message resulted from his mistaken belief that the email from the registered agent was spam, not from any desire to delay or avoid the litigation. *Id.* He understands now that he should have understood the import of the email, and he regrets that his lack of understanding contributed to the entry of default. *Id.*

## III. ARGUMENT AND AUTHORITIES

### A. Good cause exists to vacate the entry of default.

Rule 55(c) permits the Court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "A party seeking to vacate an entry of default prior to the entry of final judgment must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009) (cleaned up). The Seventh Circuit has characterized the standard as "'lenient' when, as here, the district court has not entered judgment on the default." Ex. 2, *Wand v. Kramer*, No. 22-1989, 2023 WL 4045242, at *3 (7th Cir. June 16, 2023). The Seventh Circuit "favor[s] trial on the merits over default judgment," *Cracco*, 559 F.3d at 631, and "view[s] default judgments to be a weapon of last resort, appropriate only when a party willfully disregards pending litigation," *Escamilla v. United States*, 62 F.4th 367, 372 (7th Cir. 2023) (quotation marks omitted).

#### 1. Nourish has shown good cause to vacate the entry of default.

Nourish has shown good cause to vacate the entry of default because Nourish inadvertently

did not respond to the Complaint. Good cause exists when the defendant "did not willfully ignore the pending litigation, but, rather failed to respond to the summons and complaint through inadvertence." *Cracco*, 559 F.3d at 631 (explaining defendant "should have taken measures to ensure that service of process on its registered agent was forwarded to the appropriate employee," but "there [was] no evidence that it acted willfully when it failed to respond to [the] complaint"). Good cause has been shown "through declarations establishing that [a defendant's] failure to file a timely answer was not willful but the result of a mistake in processing" documents. *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014).

Here, Nourish's failure to respond to the Complaint stemmed solely from an internal miscommunication and the CEO's mistaken belief (amid a high volume of spam and without a formal routing process at the start-up) that the registered agent's email was not legal process. Decl. ¶¶ 4–8. Courts routinely find good cause in circumstances like these where a defendant's non-response arises from an honest mistake rather than willful evasion. *See, e.g.*, *Parker*, 772 F.3d at 505; *Cracco*, 559 F.3d at 631. Plaintiffs do not oppose vacating the default, indicating that there is no prejudice to opposing parties.

**2. Nourish took quick action to correct the entry of default.**

Nourish acted quickly. Within a week of learning about the entry of default, Nourish retained legal counsel, reached out to Plaintiffs' counsel, and filed this Unopposed Motion. *See* Decl. ¶ 7. The Seventh Circuit looks at whether the defendant "acted in a timely fashion to have the default order set aside." *Cracco*, 559 F.3d at 631. For example, the Seventh Circuit recently found that a district court did not abuse its discretion in setting aside the entry of a default when, "once made aware of the case by the entry of default against the officers, the defendants obtained counsel, filed appearances, and moved to vacate the default in less than two weeks." *Norman v. City of Lake Station*, 845 F. App'x 459, 460–61 (7th Cir. 2021). The Seventh Circuit also has found

that defendants "acted quickly to correct their default" when "they filed their motion to set aside entry of default . . . only 19 days after they received notice of the lawsuit." Ex. 3, *Hudgins v. Miller*, 62 F.3d 1419 (table), No. 94-1994, 1995 WL 460579, at *3 (7th Cir. 1995). Here, Nourish "acted in a timely fashion to have the default order set aside." *Cracco*, 559 F.3d at 631.

**3. Nourish has meritorious defenses to the entire Complaint.**

Nourish also has meritorious defenses to all counts alleged in the Complaint. A meritorious defense does *not* require "showing that the defense will prevail." *Parker*, 772 F.3d at 505. Instead, a party moving to vacate entry of default need only "notif[y] the plaintiff and the district court of the nature of [the] defense and provide[] the factual basis for that defense." *Cracco*, 559 F.3d at 631.

In addition to its personal jurisdiction defense set forth below, Nourish has meritorious defenses specific to all eight claims asserted in the Complaint.[3] Consistent with the requirements of Rule 55(c), Nourish does not fully articulate each defense at this initial stage and reserves the right to further develop these defenses in subsequent pleadings.[4]

Common law invasion of privacy. "To state a cause of action for public disclosure of private facts, plaintiffs must plead and prove that (1) publicity was given to the disclosure of private facts, (2) the facts were private and not public facts, *and* (3) the matter made public would

[3] For the avoidance of doubt, Nourish is asserting a personal jurisdiction defense in this Unopposed Motion and intends separately to move to dismiss for lack of personal jurisdiction in a Rule 12(b)(2) motion if the default is vacated. *See* Ex. 4, *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, No. 13-CV-3106, 2017 WL 5971985, at *2 (N.D. Ill. Dec. 1, 2017). Nourish proceeds to analyze its defenses to the merits of the Complaint at this stage solely to vacate the default under Rule 55(c)'s "good cause" standard and does not intend to waive its personal jurisdiction defense. Accordingly, Nourish does not contend that the Court needs to rule on any of these issues, other than to the extent that they are relevant to lifting the Clerk's default.

[4] Separate from the claims themselves, Nourish also has grounds to contest the appropriateness of a class here, which is not the subject of the Clerk's default, and which Nourish reserves its right to contest at a later date.

be highly offensive to a reasonable person." Ex. 5, *Haynes v. Alfred A. Knopf, Inc.*, No. 91 C 8143, 1993 WL 68071, at *4 (N.D. Ill. Mar. 10, 1993), *aff'd*, 8 F.3d 1222 (7th Cir. 1993). "[F]or a statement to be highly offensive, a defendant must have known that a plaintiff, as a reasonable person, would have been justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Chang Hyun Moon v. Kang Jun Liu*, 44 N.E.3d 1134, 1141 (Ill. App. Ct. 2015) (emphasis omitted). Plaintiffs have failed to adequately plead facts clearing this high bar. *See In re Trans Union Corp. Priv. Litig.*, 211 F.R.D. 328, 343–44 (N.D. Ill. 2002) (dismissing privacy claim when plaintiffs did not plead factual detail necessary to show actions were "highly offensive"). Plaintiffs have failed to plead any facts showing that any highly offensive disclosure occurred.

<u>Breach of confidence.</u> Plaintiffs' claim for breach of confidence, to the extent such a claim even exists as an independent tort under Illinois law, fails. The claim requires a plaintiff to "demonstrate: (1) plaintiff conveyed confidential and novel information to the defendant; (2) defendant knew the information was being disclosed in confidence; (3) defendant understood the confidence was to be maintained; and (4) there was a disclosure or use in violation of the understanding." *Friedman v. DirecTV*, 262 F. Supp. 3d 1000, 1006 (C.D. Cal. 2015). Plaintiffs have not and cannot allege anything "novel" about the allegedly disclosed information.

<u>Breach of fiduciary duty.</u> Plaintiffs' fiduciary duty claim fails because they have not adequately pled that Nourish owed them any fiduciary duty. "To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *In re Est. of Lis*, 847 N.E.2d 879, 885 (Ill. App. Ct. 2006). "A fiduciary relationship does not arise simply because one party trusts the other, and a slightly dominant business position

does not operate to turn a formal contractual relationship into a fiduciary relationship." *In re Tecfidera Antitrust Litig.*, 791 F. Supp. 3d 852, 871 (N.D. Ill. 2025) (cleaned up). Instead, "a fiduciary duty arises either as a matter of law or by special circumstances," such as when "one party is dominated by the other." *Id.* (quotation marks omitted). No fiduciary relationship existed between Nourish and users of its website, either as a matter of law or due to special circumstances.

Negligence. Plaintiffs' negligence claim fails because Plaintiffs have failed to allege a duty owed to them in connection with their alleged voluntary use of Nourish's public website. Moreover, Plaintiffs claim that Nourish's actions violated HIPAA, but "an alleged HIPAA violation cannot form the basis of a negligence claim" because HIPAA has no private right of action. Ex. 6, *Austin v. Atlina*, No. 20-CV-6363-YGR, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021); *see also Haywood v. Novartis Pharms. Corp.*, 298 F. Supp. 3d 1180, 1190–91 (N.D. Ind. 2018) (dismissing claim based on "a duty, under a negligence theory, for violating [HIPAA] standards" because "there is no private right of action under [HIPAA]").

Breach of implied contract. Plaintiffs' implied contract claim fails because the allegations are governed by an express agreement between the parties. Under Illinois law, a party cannot assert implied breach of contract when an express contract governs. *Archon Constr. Co. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017) ("Simply put, if an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law."). Here, the allegations in the implied contract claim—including that "[w]hen Plaintiffs and Class Members provided their Sensitive Health Information to Defendant in exchange for medical services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose the Sensitive Health Information without consent"—are governed by

Nourish's express privacy policy. Compl. ¶ 4 at 2,[5] ¶ 160.

Unjust enrichment. Plaintiffs' unjust enrichment claim fails because "unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)). "Rather, it's a condition brought about by fraud or other unlawful conduct." *Id.* at 740. Nourish thus has a meritorious defense to Plaintiffs' unjust enrichment claim.

Federal Electronic Communications Privacy Act ("ECPA"). Plaintiffs' ECPA claim fails because the ECPA is a one-party consent statute, and Plaintiffs' own allegations show that Nourish consented to the purported interception by the Google Tracking Tools (as defined in the Complaint). 18 U.S.C. § 2511(2)(d) (no liability where "one of the parties to the communication has given prior consent" to interception); Ex. 7, *Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *4 (N.D. Ill. Aug. 8, 2025) ("The statute recognizes a one-party consent exception. An interceptor isn't liable if they are 'a party to the communication or where one of the parties to the communication has given prior consent to such interception.'" (quoting 18 U.S.C. § 2511(2)(d))); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (ECPA "only requires one party to the communication to consent to an interception"); Compl. ¶ 11 at 4 (alleging that Nourish "install[ed] Google's Tracking Tools on its website").

California Invasion of Privacy Act ("CIPA"). Plaintiffs' CIPA claim fails for a number of reasons, including because Plaintiffs have not alleged and cannot allege that the purported disclosure to Google constituted interception or eavesdropping under CIPA. Courts dismiss these claims because pixel transmissions are directly between the browser and nonparty, so the nonparty

---

[5] The Complaint contains duplicative numbering for paragraphs 1–21. *See* Compl. at 1–10. To avoid confusion, Nourish has also included the page number with its citations to those paragraphs.

cannot be an "eavesdropper." *See, e.g.*, Ex. 8, *Cole v. Quest Diagnostics Inc.*, No. 25-1449, 2025 WL 3172640, at *3 (3d Cir. Nov. 13, 2025) ("As the recipient of a direct communication from Plaintiffs' browsers, [Google] was a participant in Plaintiffs' transmissions such that [the defendant] did not aid or assist [Google] in eavesdropping on or intercepting such communications, even if done without the users' knowledge."); *see also* Ex. 9, *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) ("Learning the content of a communication *after* it has been sent is not eavesdropping." (emphasis added)).

In sum, Nourish has meritorious defenses to all counts in the Complaint. For these reasons, the entry of default should be vacated under Rule 55(c).

### B. Nourish expressly preserves its personal jurisdiction argument, which is another basis to vacate the entry of default.

For the reasons given above, this Court should vacate the default under Rule 55(c) because Nourish has satisfied all requirements, and Plaintiffs do not oppose the requested relief. To avoid any argument of waiver, Nourish also raises its personal jurisdiction defense, which it intends to articulate fully in a motion to dismiss. *be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011). Here, there is neither general nor specific personal jurisdiction over Nourish. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

#### 1. There is no general jurisdiction over Nourish in Illinois.

There is no general jurisdiction over Nourish in Illinois because Nourish is not incorporated in Illinois, does not have its principal place of business here, and is not otherwise essentially at home here. General jurisdiction exists only where a defendant is "essentially at home." *Goodyear*, 564 U.S. at 919. For "a corporation, the place of incorporation and principal place of business" are the paradigmatic forums. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Otherwise, a

corporation's contacts must be "so 'continuous and systematic' as to render [them] essentially at home in the forum State," which could only occur in an "exceptional case." *Id.* at 139 & n.19.

Here, Plaintiffs do not allege that the Court has general jurisdiction over Nourish. *See* Compl. ¶ 15 at 8 (alleging only specific jurisdiction). Nor could they. Plaintiffs admit that Nourish is not incorporated in Illinois and does not have its principal place of business in Illinois. Compl. ¶ 13 at 7.[6] Thus, the Court presumptively lacks general personal jurisdiction over Nourish, and no facts are alleged, or exist, to make Nourish "essentially at home" in Illinois. *Goodyear*, 564 U.S. at 919.

**2. There is no specific jurisdiction over Nourish in Illinois.**

This Court lacks specific jurisdiction over Nourish because Nourish did not "purposefully exploit[]" the Illinois market with its allegedly offending website "beyond simply operating an interactive website accessible" nationwide, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), and Plaintiffs' claims do not arise out of or relate to Nourish's actual contacts with Illinois.

Specific jurisdiction exists only "when the defendant purposefully directs its activities at the forum state *and* the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (emphasis added) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). This is because "[i]t is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it reasonably anticipate being haled into court there." *Id.* (cleaned up) (quoting *Burger King*, 471 U.S. at 472). Moreover, it is well established that the exercise of personal jurisdiction

[6] Plaintiffs correctly allege that Nourish is incorporated in Delaware but erroneously allege that Nourish's principal place of business is Texas. Compl. ¶ 13 at 7. Nourish's principal place of business is New York.

must "not offend traditional notions of fair play and substantial justice." *Id.* at 443–45 (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As set forth below, (a) Nourish did not purposefully direct its activities at Illinois; (b) Plaintiffs' alleged injuries do not arise out of or relate to Nourish's actual contacts with Illinois; and (c) exercising personal jurisdiction over Nourish would not be reasonable.

**a. Nourish did not purposefully direct its activities at Illinois.**

Nourish did not purposefully direct any allegedly offending activities at Illinois. This requirement ensures that a defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (cleaned up). Rather, a defendant's contacts must "proximately result from actions by the defendant *[itself]* that create a substantial connection with the forum State." *Id.* (emphasis in original and cleaned up).

The Seventh Circuit consistently has held that merely operating a website accessible in the forum State, even an interactive one, is insufficient to establish jurisdiction:

- *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (explaining a defendant must have "purposefully exploited" a forum state's market "beyond simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there" to be subject to personal jurisdiction).
- *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (advising courts to "be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website

that is accessible in the forum state, even if that site is 'interactive'" because "a defendant must in some way *target* the forum state's market" (emphasis in original)).

- *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (explaining specific jurisdiction is not established "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website").

Under this binding precedent, this Court lacks specific jurisdiction over Nourish because the only alleged Illinois contact is a website accessible nationwide. Plaintiffs do not, and could not, allege that Nourish targeted the Illinois market.

Plaintiffs attempt to establish specific jurisdiction by alleging that Nourish "provid[ed] services in this District," "conduct[ed] substantial business in this District," and "perpetuat[ed] unlawful acts in this District." Compl. ¶ 15 at 8. But these allegations merely restate that Nourish operates a website that Illinois residents can access. The Seventh Circuit already has rejected jurisdiction based on this exact theory: "showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website" is insufficient. *Mobile Anesthesiologists*, 623 F.3d at 446.

Nourish's national website is at the center of Plaintiffs' allegations. Plaintiffs allege that when they used Nourish's site, Nourish supposedly aided a third party (Google) in intercepting communications. *See* Compl. ¶ 47. But Plaintiffs do not and cannot allege that Nourish's website targeted Illinois. To the contrary, Plaintiffs describe an alleged nationwide practice of collecting and disclosing user data, with Illinois users representing only a subset of the supposed activity. *See, e.g.*, Compl. ¶¶ 1–11 at 1–4. Conduct that is uniform across all states cannot be said to be "purposefully directed" at Illinois. Because Plaintiffs identify no Nourish conduct aimed at Illinois,

only nationwide website operations, their allegations cannot satisfy the purposeful-direction requirement. As a result, this Court lacks specific jurisdiction over Nourish.

**b. Plaintiffs' alleged injuries do not arise from or relate to Nourish's actual contacts with Illinois.**

Additionally, Plaintiffs' claims do not arise out of or relate to Nourish's actual contacts with Illinois. There must be "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 265 (2017). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). The claims must "arise out of contacts that the defendant [*itself*] create[d] with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original and quotation marks omitted). Holding otherwise would be akin to expanding the general jurisdiction standard (which Plaintiffs acknowledge they cannot satisfy) to answer questions of specific jurisdiction.[7]

Here, nothing about Plaintiffs' allegations relating to the data allegedly collected from the website, or of Nourish's purported use of the Google Tracking Tools on the website, is alleged to have anything to do with Nourish's purported contacts with Illinois. The website is accessible from anywhere. Whether or not some of the Plaintiffs were in Illinois when they visited the website, their location at the time of access says nothing about Nourish's activities within that city, state,

[7] To this end, although not in the Complaint, Nourish acknowledges that it does have employees in Illinois (largely dietitians that provide virtual telehealth services to people in a variety of states but do not interact with patients in person in Illinois, and also three sales personnel who do not interact with patients, one software engineer who does not interact with patients, and one recruiting coordinator who does not interact with patients). Nourish has an address for receiving mail in Illinois, but no physical presence. And none of Nourish's executives sit in Illinois. None of these additional facts bear on the question of specific jurisdiction, *i.e.*, whether the allegedly offending activity is directed at Illinois specifically.

or country. If the state of residence of an internet-user alone sufficed to confer jurisdiction, it would lead to an absurd result where Nourish could be sued in *any state* just because a plaintiff accessed the website from there. That rule would not "adequately protect defendants foreign to a forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Thus, Plaintiffs' claims do not arise from or relate to Nourish's contacts with Illinois.

**c. The exercise of personal jurisdiction over Nourish would not comport with fair play and substantial justice.**

Exercising personal jurisdiction over Nourish would be neither fair nor reasonable. In determining whether the exercise of jurisdiction would be reasonable, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," and "[i]t must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987). These factors weigh against jurisdiction here:

Burden on Nourish. Litigating in Illinois would impose an unreasonable burden on Nourish, which is a Delaware corporation with its principal place of business located in New York. It should not be required to litigate a case across the country where Plaintiffs have not alleged anything other than Illinois as some of their residences.

Interests of Illinois. Although some of Plaintiffs' claims are based on Illinois law, there is otherwise no relationship to Illinois except that some of the Plaintiffs live here.

Plaintiffs' interest in obtaining relief. It is not unreasonably inconvenient to require Plaintiffs to litigate their claim in another forum, when most of the relevant information, documents, and witnesses (besides two of the three named Plaintiffs) are located outside of Illinois.

Judicial system's interest in obtaining the most efficient resolution of controversies. The most efficient judicial resolution of the controversy would not be in Illinois. Other than some of the named Plaintiffs' own documents, relevant records relating to Plaintiffs' allegations would be outside Illinois. Moreover, questions relating to Nourish's policies and procedures, its website and the services it provides, its relationships with third-party service providers, and so forth, would be answered by witnesses and documents outside Illinois.

Shared interest of the several States in furthering fundamental substantive social policies. The States share a fundamental interest in fair, predictable jurisdictional rules that do not subject out-of-state defendants like Nourish to litigation based solely on the unilateral choices of plaintiffs. Recognizing jurisdiction in this case would undermine that shared policy interest. Declining jurisdiction therefore reinforces the collective interest of the States in ensuring that defendants are not compelled to litigate in distant forums absent purposeful, forum-directed conduct.

Accordingly, all of the factors favor a finding that the exercise of jurisdiction over Nourish would be unreasonable and therefore violate due process.

## IV. PLAINTIFFS' STATUS REPORT DEADLINE SHOULD BE VACATED

The Court previously ordered Plaintiffs' counsel to file a status report with the Court by December 12, 2025, indicating when they anticipate they will have gathered enough information to file a motion for default judgment. *See* ECF No. 11. Nourish respectfully requests that the Court vacate this deadline in light of Plaintiffs' non-opposition to the relief requested herein. Plaintiffs join in this request.

## V. CONCLUSION

For these reasons, Nourish asks the Court to (1) grant the Unopposed Motion to Vacate Entry of Default Under Rule 55(c); and (2) vacate Plaintiffs' December 12, 2025 deadline to file a status report.

Dated: December 10, 2025

Respectfully submitted,

*/s/ David A. Gordon*

David A. Gordon
D. Samuel Gorsche
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7159
dgordon@sidley.com
sgorsche@sidley.com

*Counsel for Defendant Nourish, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December 10, 2025, the foregoing document was filed electronically using the ECF system, which will send notification of such filing to all counsel of record at their email addresses on file with the Court.

*/s/ David A. Gordon*
David A. Gordon