**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| ARISSA PODRAZA, SUSAN COLBY, and JESSICA KELLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOURISH, INC.,<br><br>Defendant. | Case No. 3:25-cv-50356<br><br>Honorable Iain D. Johnston<br><br>Honorable Margaret J. Schneider |

**DEFENDANT NOURISH, INC.'S MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

FACTUAL ALLEGATIONS ....................................................................................2

LEGAL STANDARD.............................................................................................4

ARGUMENT .......................................................................................................5

I. The Court lacks personal jurisdiction over Nourish. ....................................5

A. There is no general jurisdiction over Nourish in Illinois. ....................................5

B. There is no specific jurisdiction over Nourish in Illinois. ....................................6

1. By operating a national Website, Nourish did not purposefully avail itself of the privilege of conducting business in Illinois or purposefully direct its activities at Illinois. ....................................6

2. Plaintiffs' alleged injuries do not arise out of or relate to Nourish's actual contacts with Illinois. ....................................9

3. The exercise of personal jurisdiction over Nourish would not comport with traditional notions of fair play and substantial justice. ....................................10

II. Plaintiffs fail to plead a plausible claim for relief. ....................................12

A. Plaintiffs' Wiretap Claims (Counts VII and VIII) should be dismissed. ....................................12

1. The ECPA claim should be dismissed because it is a one-party consent statute, and Nourish (not to mention Google) allegedly consented. ....................................12

2. The Wiretap Claims should be dismissed because Plaintiffs fail to plead the elements of a violation. ....................................17

3. Plaintiffs do not plausibly allege that they did not consent to the data collection. ....................................19

B. Plaintiffs' common law invasion of privacy claim (Count I) should be dismissed. ....................................21

C. Plaintiffs' breach of implied contract claim (Count V) should be dismissed. ....................................23

1. Plaintiffs' claim fails because an express contract governs. ....................................23

2. Plaintiffs also cannot allege actionable contract damages. ....................................24

D. Plaintiffs' duty-based claims for breach of fiduciary duty and negligence (Counts III and IV) should be dismissed. ....24

1. Plaintiffs' fiduciary duty claim (Count III) fails. ....24

2. Plaintiffs' negligence claim (Count IV) fails. ....26

a. Plaintiffs' negligence claim fails the economic loss doctrine. ....26

b. Nourish did not owe a duty to Plaintiffs. ....27

c. Plaintiffs have not alleged harm. ....28

E. Plaintiffs' breach of confidence (Count II) and unjust enrichment (Count VI) claims should be dismissed because the claims do not exist under Illinois law. ....28

1. Plaintiffs' breach of confidence claim (Count II) should be dismissed. ....28

2. Plaintiffs' unjust enrichment claim (Count VI) should be dismissed. ....30

CONCLUSION ....30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)....................14

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................6, 7, 8, 12

*Alves v. Goodyear Tire & Rubber Co.*,
683 F. Supp. 3d 111 (D. Mass. 2023)....................10

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................15

*Archon Constr. Co. v. U.S. Shelter, LLC*,
78 N.E.3d 1067 (Ill. App. Ct. 2017) ....................23

*Arwa & Change Advocs. LLP v. Smith LaCien LLP*,
No. 24 CV 6620, 2025 WL 1807939 (N.D. Ill. July 1, 2025) ....................23

*Asahi Metal Indus. Co. v. Superior Ct.*,
480 U.S. 102 (1987)....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 15

*Austin v. Atlina*,
No. 20-CV-6363-YGR, 2021 WL 6200679 (N.D. Cal. Dec. 22, 2021) ....................27

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 14

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) ....................29

*Berry v. City of Chicago*,
181 N.E.3d 679 (Ill. 2020)....................28

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) ....................4

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022)....................26

*Boyd v. Travelers Ins. Co.*,
652 N.E.2d 267 (Ill. 1995) ....................28

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*,
No. 16 CV 10969, 2017 WL 4310671 (N.D. Ill. Sept. 28, 2017) ....................14

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017) ....................9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................7

*Buschauer v. Columbia Coll. Chi.*,
579 F. Supp. 3d 1045 (N.D. Ill. 2022) ....................30

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ....................21

*Carpenter v. Phillips*,
419 F. App'x 658 (7th Cir. 2011) ....................27

*Chang Hyun Moon v. Kang Jun Liu*,
44 N.E.3d 1134 (Ill. App. Ct. 2015) ....................21

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
887 F.3d 803 (7th Cir. 2018) ....................27

*Cole v. Quest Diagnostics Inc.*,
No. 25-1449, 2025 WL 3172640 (3d Cir. Nov. 13, 2025) ....................18

*CoVantage Credit Union v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*,
No. 21-C-867, 2021 WL 4991321 (E.D. Wis. Oct. 27, 2021) ....................8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................5

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ....................24

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ....................22

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ....................29

*Doe v. Genesis Health Sys.*,
No. 23-CV-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024)........................26, 27

*Doe v. Genesis Health Sys.*,
No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ..........................27, 29

*In re Est. of Lis*,
847 N.E.2d 879 (Ill. App. Ct. 2006) ..........................................................................25

*Factory Mut. Ins. Co. v. Bobst Grp. Inc.*,
No. 02-CV-283, 2002 WL 1263991 (N.D. Ill. June 5, 2002)..................................................4

*Fin. Fiduciaries, LLC v. Gannett Co.*,
46 F.4th 654 (7th Cir. 2022) ..............................................................................................3

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)...........................................................................................................10

*Friedman v. DirecTV*,
262 F. Supp. 3d 1000 (C.D. Cal. 2015) ..................................................................29, 30

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..............................................................................................................5

*Hannant v. Culbertson*,
No. 4:24-CV-04164, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ................................16, 22

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)..................................................22

*Haynes v. Alfred A. Knopf, Inc.*,
No. 91 C 8143, 1993 WL 68071 (N.D. Ill. Mar. 10, 1993) ....................................................21

*Haywood v. Novartis Pharms. Corp.*,
298 F. Supp. 3d 1180 (N.D. Ind. 2018) ..............................................................................27

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
466 U.S. 408 (1984)..............................................................................................................9

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ................................17, 18

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ..............................................................................................30

*Juenger v. Deaconess Health Sys., Inc.*,
No. 3:24-CV-2332-NJR, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ................................29

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................13

*Khan v. BDO Seidman, LLP*,
948 N.E.2d 132 (Ill. App. Ct. 2011) ....................28

*Kipp v. Ski Enter. Corp. of Wis., Inc.*,
783 F.3d 695 (7th Cir. 2015) ....................4, 5

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................13, 19

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................22, 23, 29

*Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*,
No. 16-CV-7619, 2016 WL 7409916 (N.D. Ill. Dec. 22, 2016) ....................25

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
938 F.3d 874 (7th Cir. 2019) ....................6, 7

*In re Lurie Children's Hosp. Data Sec. Litig.*,
No. 24-CV-05503, 2025 WL 2754760 (N.D. Ill. Sept. 27, 2025) ....................26

*McGill v. Gigantex Techs. Co.*,
No. 05C5892, 2005 WL 3436403 (N.D. Ill. Dec. 12, 2005) ....................11

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020) ....................8

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ....................26

*Miracle-Pond v. Shutterfly, Inc.*,
No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ....................20

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*,
623 F.3d 440 (7th Cir. 2010) ....................6, 7, 8

*Nguyen v. Abbott Lab'ys, Inc.*,
No. 24 CV 8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ....................13

*Ogdon v. Hoyt*,
No. 04 C 2412, 2005 WL 66039 (N.D. Ill. Jan. 11, 2005) ....................25

*Olson v. Ferrara Candy Co.*,
No. 1-24-1126, 2025 IL App (1st) 241126 (Ill. App. Ct. June 25, 2025) ....................26

*Parker v. Barclays Bank Del.*,
No. CV 25-2217, 2025 WL 2779334 (E.D. Pa. Sept. 29, 2025) ..............................................9

*PDC Lab'ys, Inc. v. Hach Co.*,
No. 09-1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) ..................................................20

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ........................................................................................27

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
No. 21 C 0336, 2022 WL 393572 (N.D. Ill. Feb. 9, 2022).....................................................17

*Portillo v. Nebula Genomics, Inc.*,
No. 24-CV-9894, 2025 WL 2084215 (N.D. Ill. July 24, 2025)................................................9

*Rodriguez v. ByteDance, Inc.*,
No. 23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ...........................................17, 18

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)...................................14

*Roehrborn v. Lambert*,
660 N.E.2d 180 (Ill. App. Ct. 1995) .........................................................................................22

*Santora v. Starwood Hotel & Resorts Worldwide, Inc.*,
580 F. Supp. 2d 694 (N.D. Ill. 2008) .........................................................................................10

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ......................................20

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ..................................................................................................20

*TAS Distrib. Co. v. Cummings Eng'g Co.*,
491 F.3d 625 (7th Cir. 2007) .....................................................................................................24

*In re Tecfidera Antitrust Litig.*,
791 F. Supp. 3d 852 (N.D. Ill. 2025) .........................................................................................25

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ...............................................................................................20, 23

*In re Trans Union Corp. Priv. Litig.*,
211 F.R.D. 328 (N.D. Ill. 2002)..................................................................................................21

*In re Trans Union Corp. Priv. Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) .........................................................................................22

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................19

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ....................30

*Vartanian v. VW Credit, Inc.*,
No. 2:11-CV-10776, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ....................19

*Walden v. Fiore*,
571 U.S. 277 (2014)....................9

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*,
No. 23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024)....................24

*Zak v. Bose Corp.*,
No. 17-CV-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)....................13

**Statutes and Rules**

18 U.S.C. § 2510....................17

18 U.S.C. § 2511....................12, 13

42 U.S.C. § 1320d....................15

Cal. Pen. Code § 631....................12, 17, 19

Cal. Pen. Code § 632....................12, 17, 19

45 C.F.R. § 160.103....................14, 15

Fed. R. Civ. P. 12....................4

**Other Authorities**

Nourish, *Privacy Policy*, https://www.usenourish.com/privacy (last updated Jan. 2022)....................2

Nourish, *Terms of Use*, https://www.usenourish.com/terms/jan-2022-terms (pub. Jan. 2022)....................3

*Three-Quarter of U.S. Adults Are Now Overweight or Obese*, N.Y. Times (Nov. 14, 2024),
https://www.nytimes.com/2024/11/14/well/obesity-epidemic-america.html....................2

Defendant Nourish, Inc. ("Nourish") respectfully files this Motion to Dismiss (the "Motion") Plaintiffs' Class Action Complaint, ECF No. 1 (the "Complaint").

**INTRODUCTION**

This case is the most recent of hundreds of purported class actions complaining about the privacy implications of website tools on company websites. Those cases often involve disclosure threats to what Plaintiffs here refer to as "the most personal and sensitive aspects of an individual's life," including pornography, mental health, substance abuse, pregnancy, and STIs. Compl. ¶ 24. In those cases, pertaining to those private moments, the specific claims often are dismissed anyway for a variety of reasons, including consent, lack of intentional misconduct, lack of true privacy interests, contractual bars, or lack of duty owed by the website operator. Each of those reasons for dismissal applies here and is discussed below, and each is reason enough to dismiss this case.

This case is even worse for Plaintiffs here for two additional reasons. *First*, this Court lacks personal jurisdiction. Plaintiffs concede there is no general jurisdiction in Illinois, Compl. ¶ 13 at 7,[1] and Plaintiffs cannot show specific jurisdiction because they cannot show that their claims about Nourish's *national* website involve conduct that Nourish purposefully directed at *Illinois*.

*Second*, in this case, the privacy interests at stake are far smaller than those seen in the typical output of the cottage industry of privacy class actions, and are insufficient to state a claim. Although Plaintiffs allege that Nourish, an online provider of remote appointments with dietitians, embedded Google Analytics into its website, https://www.usenourish.com (the "Website"); Compl. ¶¶ 10–12 at 3–4, they do not complain about the disclosure of actual health information, much less information of the highly sensitive nature present in other cases. Instead, Plaintiffs complain that the Google Analytics tools allowed non-party Alphabet, Inc. ("Google") to

[1] The Complaint uses duplicative numbering for paragraphs 1–21. *See* Compl. at 1–10. To avoid confusion, Nourish also has included the page number with its citations to those paragraphs.

"intercept" information related only to "the fact that [they were] scheduling an appointment with a dietician, the date of [their] appointment, the name of [their] treating dietician, and the state in which [their] treating dietician is licensed." Compl. ¶ 18 at 5, ¶ 54. In paragraph five of the Complaint, Plaintiffs label these items—the mere fact, date, name, and location of a request to consult with a dietitian—as "Sensitive Health Information," and never look back. But there is no individual health information disclosed by the fact that a person schedules an appointment with a dietitian. In a country where almost 75% of the population are overweight or obese,[2] the appointment could relate to any number of health conditions—or *no* health condition at all. The fact that an individual wants to have an initial conversation with a dietitian—either for themselves or for someone in their care—cannot sustain a privacy claim. It is through this lens that the claims should be evaluated and dismissed.

## <u>FACTUAL ALLEGATIONS</u>

Nourish is incorporated in Delaware and has its principal place of business in New York.[3] Compl. ¶ 13 at 7. Nourish offers telehealth appointments with registered dietitians through its Website. *Id.* ¶ 3 at 2. Every page of the Website includes a conspicuous link to Nourish's Privacy Policy (the "Privacy Policy"). *See* Nourish, *Privacy Policy*, https://www.usenourish.com/privacy (last updated Jan. 2022). Among other things, the Privacy Policy discloses that Nourish may "automatically collect certain information about your device, including information about your web browser, IP address, time zone, and some of the cookies that are installed on your device." *Id.* The Privacy Policy also discloses that, "as you browse the [Website], we collect information about the individual web pages or products that you view, what websites or search terms referred you to

[2] *See*, *e.g.*, "Three-Quarter of U.S. Adults Are Now Overweight or Obese," N.Y. Times (Nov. 14, 2024), https://www.nytimes.com/2024/11/14/well/obesity-epidemic-america.html.

[3] Plaintiffs correctly allege that Nourish is incorporated in Delaware but erroneously allege that Nourish's principal place of business is Texas. Compl. ¶ 13 at 7. Still, its principal place of business is not Illinois.

the [Website], and information about how you interact with the [Website].” *Id.* This information is collected using “[c]ookies,” “[l]og files,” and “[w]eb beacons,” “tags,” and “pixels,” which “are electronic files used to record information about how you browse the [Website].” *Id.*

The Privacy Policy also includes a separate section on “Sharing Your Personal Information.” *Id.* The Privacy Policy expressly states the following:

> We share your Personal Information with third parties to help us use your Personal Information, as described above. We use Google Analytics to help us understand how our customers use the [Website] -- you can read more about how Google uses your Personal Information here. You can also opt-out of Google Analytics here.[4]

Nourish’s Privacy Policy forms an express contract between the parties because it is incorporated into the Website’s Terms of Use, which are prominently available on the Website. *See* Nourish, *Terms of Use*, https://www.usenourish.com/terms/jan-2022-terms (pub. Jan. 2022) (“These Terms include the provisions in this document, as well as those in our privacy policy (www.usenourish.com/privacy).”).[5] Because the Website is referenced and depicted in part throughout the Complaint, *see*, *e.g.*, Compl. ¶¶ 46–50, the Privacy Policy on the Website may be considered here. *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (on motion to dismiss “a court may consider documents that are (1) referenced in the plaintiff’s complaint, (2) concededly authentic, and (3) central to the plaintiff’s claim”).

Each Plaintiff—two from Illinois (Podraza and Keller) and one from California (Colby)—alleges they “utilized the Website on [their] personal electronic devices to schedule an appointment with a Nourish dietitian.” Compl. ¶ 2 at 6, ¶¶ 16–17 at 5, ¶¶ 7–8 at 7. Plaintiffs allege that the Website transmitted the information they “input into [their] appointment form, including the fact that [they were] scheduling an appointment with a dietician, the date of [their] appointment, the

[4] The references to “here” link to webpages maintained by Google that explain Google’s privacy policy and permit users to opt-out of using Google Analytics, respectfully.
[5] The January 2022 Terms of Use were in effect when the Complaint was filed and are relevant here.

name of [their] treating dietician, and the state in which [their] treating dietician is licensed." *Id.* ¶ 18 at 5, ¶ 3 at 6, ¶ 9 at 7. Plaintiffs allege that Nourish "install[ed] Google's surveillance software on [its] [W]ebsite" "including 'tracking pixels' ('Pixels') and third-party 'cookies.'" *Id.* ¶ 9 at 3, ¶ 11 at 4. Despite never mentioning the Privacy Policy, Plaintiffs claim they "never authorized Defendant to disclose any aspect of [their] communications with Defendant through the Website to third parties." *Id.* ¶ 19 at 5, ¶ 4 at 6, ¶ 10 at 7. Plaintiffs also allege—directly contrary to the face of the Privacy Policy—that "Nourish tells its users in its privacy policy that it would keep their personal information private and not share that information with others." *Id.* ¶ 4 at 2; *see id.* ¶ 105.

## LEGAL STANDARD

When a defendant challenges personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But courts "need not accept as true statements of law or unsupported conclusory factual allegations," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), as Rule 8's "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678 (pleading cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (citation modified). And "a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint." Ex. 1, *Factory Mut. Ins. Co. v. Bobst Grp. Inc.*, No. 02-CV-283, 2002 WL 1263991, at *3 (N.D. Ill. June 5, 2002).

## ARGUMENT

### I. The Court lacks personal jurisdiction over Nourish.

"Exercises of personal jurisdiction" are limited "by due process constraints on the assertion of adjudicatory authority." *Daimler AG v. Bauman*, 571 U.S. 117, 121–22 (2014). Federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Id.* at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, federal due process and the law of the forum state limit this Court's exercise of personal jurisdiction. *Id.* at 117. This is a single inquiry here because the Illinois long-arm statute "permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp*, 783 F.3d at 697.

#### A. There is no general jurisdiction over Nourish in Illinois.

There is no general jurisdiction over Nourish in Illinois: Nourish is not incorporated in Illinois, does not have its principal place of business here, and is not essentially at home here. General jurisdiction exists only where a defendant is "essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For "a corporation, the place of incorporation and principal place of business" are paradigmatic forums. *Daimler*, 571 U.S. at 137. Otherwise, a corporation's contacts must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State," which could occur only in an "exceptional case." *Id.* at 139 & n.19; *Kipp*, 783 F.3d at 698 ("general jurisdiction . . . should not lightly be found").

Here, Plaintiffs do not allege that the Court has general jurisdiction over Nourish. *See* Compl. ¶ 15 at 8. Nor could they. Plaintiffs admit that Nourish is not incorporated in Illinois and does not have its principal place of business in Illinois. Compl. ¶ 13 at 7; *see supra* note 3. Thus, the Court presumptively lacks general personal jurisdiction over Nourish, and no facts are alleged, or exist, to make Nourish "essentially at home" in Illinois. *Goodyear*, 564 U.S. at 919; *see Kipp*, 783 F.3d at 697–700 (denying general jurisdiction).

### B. There is no specific jurisdiction over Nourish in Illinois.

The Court also lacks specific jurisdiction over Nourish because Nourish did not "purposefully exploit[]" the Illinois market with the allegedly offending Website "beyond simply operating an interactive website accessible" nationwide, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), and Plaintiffs' claims do not arise out of or relate to Nourish's actual contacts with Illinois.

Specific jurisdiction exists only when *each* of three requirements is met. "First, the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (cleaned up). "Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities." *Id.* And third, "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* "It is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it reasonably anticipate being haled into court there." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (cleaned up).

As set forth below, (1) Nourish did not, by operating a national Website, purposefully avail itself of the privilege of conducting business in Illinois or purposefully direct its activities at Illinois; (2) Plaintiffs' alleged injuries do not arise out of or relate to Nourish's contacts with Illinois; and (3) exercising personal jurisdiction over Nourish would not be fair or reasonable.

#### 1. By operating a national Website, Nourish did not purposefully avail itself of the privilege of conducting business in Illinois or purposefully direct its activities at Illinois.

Nourish did not use its Website to purposefully avail itself of the privilege of conducting business in Illinois or purposefully direct its activities at Illinois. This requirement looks at whether

there are "'minimum contacts' between the defendant and the forum State," *Lexington*, 938 F.3d at 879 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)), and "focuses on 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there,'" *id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). A defendant may not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up). Rather, a defendant's contacts must "proximately result from actions by the defendant *[itself]* that create a substantial connection with the forum State." *Id.* (emphasis in original and cleaned up).

The Seventh Circuit consistently has held that merely operating a website accessible in the forum state, even an interactive one, is insufficient to establish jurisdiction:

- *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (defendant must have "purposefully exploited" a state's market "beyond simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there" to be subject to personal jurisdiction).

- *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (advising courts to "be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive'" because "a defendant must in some way *target* the forum state's market" (emphasis in original)).

- *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (specific jurisdiction is not established "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website").

Under this binding precedent, this Court lacks specific jurisdiction over Nourish because the only alleged Illinois contact is the Website that is accessible nationwide. Nourish's national Website is at the center of Plaintiffs' allegations. Plaintiffs allege that when they used Nourish's Website, Nourish supposedly aided a third party (Google) in intercepting communications. *See* Compl. ¶ 47. But Plaintiffs do not and cannot allege that Nourish's Website specifically targeted

Illinois. Instead, Plaintiffs describe an alleged *nationwide* practice of collecting and disclosing user data, with Illinois users representing a subset of the supposed activity. *See*, *e.g.*, Compl. ¶¶ 3–11 at 2–4. Conduct that is uniform across all states cannot establish personal jurisdiction in Illinois. *See*, *e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 722 (S.D. Ill. 2020) (plaintiffs alleged that defendants applied their technology to every call at call centers, "not just those calls initiated by Illinois residents," so "[t]he Court [could not] say, then, that [d]efendants purposefully availed themselves of the privilege of conducting business in Illinois or directed their activities at residents of Illinois").

Plaintiffs attempt to establish specific jurisdiction by alleging that Nourish "provid[ed] services in this District," "conduct[ed] substantial business in this District," and "perpetuat[ed] unlawful acts in this District." Compl. ¶ 15 at 8. But these conclusory allegations merely restate that Nourish operates a national Website that Illinois residents can access. The Seventh Circuit already has rejected jurisdiction based on this exact theory: "showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website" is insufficient. *Mobile Anesthesiologists*, 623 F.3d at 446.[6]

Plaintiffs cannot show that Nourish—through the use of its national Website—purposefully availed itself of the privilege of conducting business in Illinois or purposefully

[6] The Complaint pleads no facts as to Nourish employees in Illinois, telehealth consumers in Illinois (aside from two of the Plaintiffs' residences in Illinois, *see* Compl. ¶ 16 at 5, ¶ 7 at 7, ¶ 15 at 8), or dietitians in Illinois because critically, none of these facts would relate to the allegations in the Complaint, which is a separate requirement to establish personal jurisdiction, as discussed in Section I.B.2, *infra*. *See*, *e.g.*, *Advanced Tactical*, 751 F.3d at 801 ("Looking at the over 600 sales that [the defendant] allegedly made to [the forum state's] residents in the two years before suit was filed does not help matters. Specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state. The only sales that would be relevant are those that were related to [the defendant's] allegedly unlawful activity."); Ex. 2, *CoVantage Credit Union v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, No. 21-C-867, 2021 WL 4991321, at *4 (E.D. Wis. Oct. 27, 2021) ("'[G]eneral connections with the forum are not enough,' as [d]efendant's non-suit-related contacts are not relevant to the specific jurisdiction analysis." (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017))).

directed its activities at Illinois. This Court lacks specific jurisdiction for this reason alone.

### 2. Plaintiffs' alleged injuries do not arise out of or relate to Nourish's actual contacts with Illinois.

Additionally, Plaintiffs' claims do not arise out of or relate to Nourish's actual contacts with Illinois. There must be "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb*, 582 U.S. at 265. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984). The claims must "arise out of contacts that the defendant [*itself*] create[d] with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original and quotation marks omitted).

Here, nothing about Plaintiffs' allegations relating to the data allegedly collected from the Website, or Nourish's purported use of the Google Analytics tools on the Website, is alleged to have anything to do with *Nourish's* purported contacts with Illinois. The Website is accessible from anywhere. Whether or not some of the Plaintiffs were in Illinois when they visited the Website, their location at the time of access says nothing about Nourish's activities within Illinois. *See* Ex. 3, *Portillo v. Nebula Genomics, Inc.*, No. 24-CV-9894, 2025 WL 2084215, at *5 (N.D. Ill. July 24, 2025) (no specific jurisdiction over Google in Illinois when, "[w]hile plaintiff herself was located in Illinois, nowhere does Plaintiff allege that any of *Google's* suit-related conduct—receipt of her data or creation of her 'profile'—occurred in Illinois" (emphasis in original)); *see also* Ex. 4, *Parker v. Barclays Bank Del.*, No. CV 25-2217, 2025 WL 2779334, at *1, *4–5 (E.D. Pa. Sept. 29, 2025) (claims against a bank that operated a website with cookies did not "arise out of" or "relate to" the company's contacts with Pennsylvania when the plaintiff did not allege that the company procured pixels from the third party in Pennsylvania, integrated them into its website in

Pennsylvania, or configured them to transmit data to third parties in Pennsylvania, and to the extent the company "did anything in Pennsylvania with [the plaintiff's] device," the plaintiff himself "generated those contacts"); *Alves v. Goodyear Tire & Rubber Co.*, 683 F. Supp. 3d 111, 113–17 (D. Mass. 2023) (no personal jurisdiction over a company that used Session Replay Code technology on its website, rejecting plaintiff's argument that he was physically present in the state).

If the state of residence of an internet-user alone sufficed to confer jurisdiction, it would lead to an absurd result where Nourish could be sued in *any state* just because a plaintiff accessed the Website from there. That rule would not "adequately protect defendants foreign to a forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Thus, Plaintiffs' claims do not arise out of or relate to Nourish's contacts with Illinois, and the Court lacks specific jurisdiction over Nourish for this reason alone. Holding otherwise would be akin to expanding the general jurisdiction standard (which Plaintiffs acknowledge they cannot satisfy, Compl. ¶ 15 at 8).

#### 3. The exercise of personal jurisdiction over Nourish would not comport with traditional notions of fair play and substantial justice.

Separately, exercising personal jurisdiction would be neither fair nor reasonable here. Relevant factors are the "burden on the defendant," "interests of the forum State," "plaintiff's interest in obtaining relief," "interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987).

Burden on Nourish. Litigating in Illinois would impose an unreasonable burden on Nourish, a Delaware corporation with its principal place of business located in New York. Nourish should not be required to litigate a case across the country where Plaintiffs have not alleged anything other than Illinois as two of their three residences. *See Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 701 (N.D. Ill. 2008) ("Of all these factors, however,

the burden on the defendant forced to litigate in a foreign forum is still the primary concern.").

Interests of Illinois. Two plaintiffs live in Illinois; one does not. Because not all of the Plaintiffs are Illinois residents, *see* Compl. ¶ 1 at 6, "Illinois' legitimate interests in the dispute are diminished," Ex. 5, *McGill v. Gigantex Techs. Co.*, No. 05C5892, 2005 WL 3436403, at *4 (N.D. Ill. Dec. 12, 2005).

Plaintiffs' interest in obtaining relief. It is not unreasonably inconvenient to require Plaintiffs to litigate their claims in another forum, when one of the Plaintiffs is not even an Illinois resident, and the purportedly offending conduct occurred on a national Website, not specifically in Illinois. *See id.* ("Neither party ha[d] a substantial interest in adjudicating the case in Illinois" when neither plaintiff nor defendant resided in Illinois, and none of the "relevant transactions or conduct occurred in Illinois.").

Judicial system's interest in obtaining the most efficient resolution of controversies. The most efficient judicial resolution of the controversy would not be in Illinois. Other than some of the named Plaintiffs' own documents, relevant records relating to Plaintiffs' allegations would be outside Illinois. Moreover, questions relating to Nourish's policies and procedures, its Website and the services it provides, its relationships with third-party service providers, and so forth, would be answered by witnesses and documents outside Illinois. *See id.* (explaining "litigating in Illinois would not obtain efficient resolution of this matter" when "[t]he parties and all witnesses and documentary evidence are located outside Illinois").

Shared interest of the several states in furthering fundamental substantive social policies. The states share a fundamental interest in fair, predictable rules that do not subject out-of-state defendants like Nourish to litigation based solely on plaintiffs' choices. Finding jurisdiction here would undermine that shared interest. Declining jurisdiction reinforces the collective interest of

all states in ensuring that defendants are not compelled to litigate in distant forums absent purposeful conduct. *Advanced Tactical*, 751 F.3d at 803 ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

## II. Plaintiffs fail to plead a plausible claim for relief.

### A. Plaintiffs' Wiretap Claims (Counts VII and VIII) should be dismissed.

Plaintiffs bring a single federal claim under Title I of the ECPA, known as the Wiretap Act, 18 U.S.C. § 2511, which is violated when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see id.* § 2511(1)(c), (d). Plaintiffs also bring a claim under CIPA,[7] California's analog to the Wiretap Act, which likewise makes it unlawful to "intentionally tap[], or make[] any unauthorized connection . . . or [] willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication." Cal. Pen. Code § 631(a). Because these claims are similar, Nourish addresses them together.

#### 1. The ECPA claim should be dismissed because it is a one-party consent statute, and Nourish (not to mention Google) allegedly consented.

As an initial matter, Plaintiffs' ECPA claim (Count VII) should be dismissed because it is a one-party consent statute, and Plaintiffs' own allegations admit (at a minimum) that *Nourish* consented to the purported interception by the Google Analytics tools. 18 U.S.C. § 2511(2)(d) (no

[7] Plaintiffs appear to bring a claim under only Section 631 of CIPA, not Section 632. Compl. ¶¶ 205–15. Plaintiffs' Complaint cites expressly to Section 631(a), and does not mention the elements required under Section 632; instead, they make only stray references to "eavesdrop." *Id.* ¶¶ 208, 211. Out of an abundance of caution, Nourish has briefed dismissal under both Sections 631 and 632.

liability where "one of the parties to the communication has given prior consent" to interception); Ex. 6, *Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *4 (N.D. Ill. Aug. 8, 2025) ("The statute recognizes a one-party consent exception. An interceptor isn't liable if they are 'a party to the communication or where one of the parties to the communication has given prior consent to such interception.'" (quoting 18 U.S.C. § 2511(2)(d))). "Indeed, a defendant is a 'party' to the communication within the meaning of the Wiretap Act when the defendant is a participant, even if the defendant was not an *intended* participant" in the communication. Ex. 7, *Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019). Because Plaintiffs' allegations, if accepted as true, affirmatively assert that *Nourish* consented to the purported interception by the Google Tracking Tools (as defined in the Complaint), liability is precluded. Compl. ¶ 11 at 4 (Nourish "install[ed] Google's Tracking Tools on its [W]ebsite"); *id.* ¶ 18 at 9 ("for website operators to get information from Google Analytics about their website's visitors, they must allow data collection through installation of Google's Tracking Tools on their website"); *see also Zak*, 2019 WL 1437909, at *3 ("Courts are clear that in the context of the Wiretap Act, a party to the conversation is one who takes part in the conversation." (quotation marks omitted)); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023). Plaintiffs' conclusory allegation that Nourish is not a party to the communications, Compl. ¶ 193, is inconsistent with the Complaint's other allegations, which allege that Plaintiffs transmitted the allegedly sensitive information to Nourish, *see id.* ¶ 16 at 5.

Separately, although there is a crime-tort exception to this provision under 18 U.S.C. § 2511(2)(d), Plaintiffs have failed to plausibly allege that Nourish intended to commit a crime or tort here, let alone that that "the *primary motivation* or a *determining* factor in the [defendant's] actions has been to injure plaintiffs tortiously." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d

928, 945 (N.D. Cal. 2023) (emphasis added and citation omitted). Plaintiffs' conclusory allegation that Nourish used the Tools "for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States," while listing some of the causes of action in the Complaint, is a textbook example of what *Twombly* forbids: surviving a motion to dismiss without *any* factual allegation. Ex. 8, *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, No. 16 CV 10969, 2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017). Moreover, Plaintiffs expressly (and repeatedly) admit that the *actual* intent of the Tools is based on Nourish's decision "to prioritize its marketing efforts and profits over its patients' privacy." Compl. ¶ 11 at 4; *see also, e.g.*, *id.* ¶ 10 at 3, ¶¶ 27, 199; Ex. 9, *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (crime-tort exception does not apply to alleged interception by third-party internet applications when purpose is "plainly . . . to make money" (citation omitted)).[8] Plaintiffs thus acknowledge that the *intent* is *not criminal*.

Still separately, Plaintiffs have not alleged a HIPAA violation at all.[9] Although they complain about what *they label* "Sensitive Health Information," Plaintiffs do not allege the disclosure or misuse of actual protected health information ("PHI"). PHI means "individually identifiable health information" ("IIHI") that meets certain criteria. 45 C.F.R. § 160.103. IIHI, in turn, means information that (1) "relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual," and (2) "identifies the individual"

---

[8] Some courts in this District have held that the crime-tort exception applies when a HIPAA violation is alleged, even when any disclosure was done "for purposes of financial gain." *See* Ex. 10, *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024). But this analysis ignores that the *primary* motivation must be to injure plaintiffs tortiously, which is not possible when any alleged disclosure was done for financial gain. And it requires a factual allegation of criminal purpose.

[9] Nourish explains throughout this Motion why the alleged crimes or torts of invasion of privacy, breach of confidence, breach of fiduciary duty, and CIPA violations lack merit.

or "with respect to which there is a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6)(B); 45 C.F.R. § 160.103.

Here, for starters, the Complaint includes conclusory allegations that merely recite the term PHI and its synonyms. *See*, *e.g.*, Compl. ¶ 5 at 2 ("Defendant collected and transmitted personally identifiable and sensitive health information"); ¶ 9 at 3 ("third-party 'cookies' that capture sensitive, personally identifiable and protected health information"). Those legal conclusions must be disregarded. *See Iqbal*, 556 U.S. at 678.

The facts Plaintiffs *do* allege are not IIHI. Plaintiffs allege that Nourish transmitted four types of information: "the fact that [Plaintiffs were] scheduling an appointment with a dietician, the date of [their] appointment, the name of [their] treating dietician, and the state in which [their] treating dietician is licensed." Compl. ¶ 18 at 5, ¶ 3 at 6, ¶ 9 at 7. But that information is not IIHI—there is no individual health information disclosed by the fact that a person wants to talk to a dietitian, which could relate to any of a myriad health concerns, or none at all.

Separately, Plaintiffs do not establish that it was apparent to the recipient that the information relates to Plaintiffs' *own* health conditions, another necessary element to claim IIHI was disclosed. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 789, 807 (N.D. Tex. 2024) (vacating HHS guidance that sought to "shoehorn additional information into the IIHI definition," "including circumstances where an online technology connects (1) an individual's IP address with (2) a visit to [an unauthenticated web page] addressing specific health conditions or healthcare providers").[10] This "combination of data [does] not constitute a HIPAA violation in part because attributing IIHI status to that combination depend[s] upon the visitor's subjective motive for visiting that website—one would need to infer that the webpage's visitor was a patient, as opposed

[10] In fact, the court in *American Hospital Ass'n*, 738 F. Supp. 3d at 804–07, vacated the HHS Bulletin that Plaintiffs cite in the Complaint, Compl. ¶¶ 87–95.

to a public-health researcher or hospital employee, and the combination of metadata standing alone did not support such an inference." Ex. 11, *Hannant v. Culbertson*, No. 4:24-CV-04164, 2025 WL 2413894, at *4 (C.D. Ill. Aug. 20, 2025). The mere fact that an IP address visited a website about a health condition or health care provider does not indicate that the visit was for that own individual's health-related purposes. Here, Plaintiffs do not allege sufficient facts to indicate *why* an individual visited the Nourish Website. *See id.* at *5 (dismissing ECPA claim where plaintiff's allegations "lack[ed] the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation" including because plaintiff did not allege that she "actually contacted any specific physician, that she actually obtained any of her medical records, nor even that she logged into the patient portal").

In addition, Plaintiffs allege that Nourish permitted Google to "acquire information about the user's device and browser, such as their screen resolution, time zone setting, browser software type and version, operating system type and version, language setting, and IP address." Compl. ¶ 44. But these allegations do not plausibly show that the information supposedly disclosed is IIHI—information that *both* identifies an individual and relates to that individual's specific health condition. This information merely identifies the devices used to access the Website, combined with information that a dietitian appointment was submitted, which can be accomplished without signing up for the service while the Website is in an unauthenticated state, which does not constitute PHI. *See id.* ¶ 5; *id.* ¶ 44 ("information about the user's device and browser"). Nor does the fact that Plaintiffs allegedly received ads for nutrition services mean that *PHI* was disclosed, *see id.* ¶ 21 at 6, as it could just mean that they visited the unauthenticated Website. For these reasons alone, Plaintiffs' ECPA claim should be dismissed.

### 2. The Wiretap Claims should be dismissed because Plaintiffs fail to plead the elements of a violation.

Plaintiffs' Wiretap Claims (Counts VII and VIII) both independently fail because Plaintiffs fail to plead the elements of a violation under the ECPA or CIPA. Both statutes require an (1) intentional (2) interception of (3) the contents of a communication. *See* 18 U.S.C. § 2510(1), (4), (8); Cal. Pen. Code §§ 631–632; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

<u>Interception/Eavesdropping.</u> Both the ECPA and CIPA Sections 631 and 632 require an intentional *interception or eavesdropping*. But based on Plaintiffs' voluntary disclosure of personal information on the Website, Plaintiffs cannot plausibly allege that any of their information was "intercepted" via the Google Tracking Tools. Plaintiffs' Complaint makes clear that they voluntarily used the Website to schedule an appointment with a dietitian. Compl. ¶ 17 at 5, ¶ 2 at 6, ¶ 8 at 7.

Plaintiffs fail to allege that the purported disclosure to Google constitutes interception or eavesdropping under the ECPA or CIPA. Plaintiffs allege the disclosure to Google occurs separate from, and after, that information is submitted on the Website. *See*, *e.g.*, Compl. ¶¶ 60–61, 63, 65–66 (referencing disclosures *after* information is submitted on the Website). "Learning the content of a communication after it has been sent is not eavesdropping." Ex. 12, *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025); *see also* Ex. 13, *Rodriguez v. ByteDance, Inc.*, No. 23 CV 4953, 2025 WL 672951, at *8 (N.D. Ill. Mar. 3, 2025) (dismissing claims under the ECPA and CIPA where "it is not clear whether any communications were intercepted while in transit as opposed to merely shared with third parties after the fact"); Ex. 14, *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, No. 21 C 0336, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) (dismissing claims under the ECPA where plaintiffs

failed to plead allegations showing that the contents of their communication were "intercepted" contemporaneously during their "transmission"). Allegations that "merely suggest that third parties gain access to [] users' communications at some point, not that third parties 'secretly listen' to the communication as it is being transmitted" to the defendant fail to support an eavesdropping claim because they do not "indicate when the interception occurs." *Hernandez-Silva*, 2025 WL 2233210, at *5.

Plaintiffs' conclusory allegation that, "by installing and configuring the Tracking Tools to permit Google to eavesdrop," Compl. ¶ 208, is "[a] single vague and conclusory allegation" that contradicts their allegations that the disclosures occurred after and separate from their Website submissions, *Hernandez-Silva*, 2025 WL 2233210, at *5 (finding allegation that data is shared "in real time" or "near-real time" is insufficient to demonstrate eavesdropping); *see Rodriguez*, 2025 WL 672951, at *8 (allegations "that defendants 'intercept' plaintiffs' communications . . . are purely conclusory"). Indeed, Plaintiffs' tacit admission that the purported transmission to Google occurs separate from the Website transmission similarly forecloses their claim that Google was "eavesdropping." *See* Ex. 15, *Cole v. Quest Diagnostics Inc.*, No. 25-1449, 2025 WL 3172640, at *3 (3d Cir. Nov. 13, 2025) ("As the recipient of a direct communication from Plaintiffs' browsers, [Google] was a participant in Plaintiffs' transmissions such that [the defendant] did not aid or assist [Google] in eavesdropping on or intercepting such communications, even if done without the users' knowledge."). Because Google was a direct recipient of the transmissions, it cannot be an interceptor, and Plaintiffs' claim should be dismissed.

Through their use of the Website, Plaintiffs also agreed, pursuant to Nourish's Privacy Policy, that their information *could* be shared with third parties and that Nourish "use[s] Google Analytics to help [Nourish] understand how [its] customers use the [Website]." *See supra*, Privacy

Policy. The Privacy Policy also discloses that Nourish "collect[s] Device Information using the following technologies: '[c]ookies' . . . '[l]og files' . . . '[w]eb beacons,' 'tags,' and 'pixels.'" *Id.* And the Privacy Policy discloses that "[c]ookies and similar technologies may be used by our online data partners or vendors to associate these activities with other personal information they or others have about you, including by association with your email." *Id.* Such disclosures undermine claims that Plaintiffs' personal information was improperly intercepted through the use of the Google Tracking Tools. *See Kurowski*, 659 F. Supp. 3d at 938 ("The court concludes that [defendant] . . . was the intended recipient of the allegedly intercepted communications here. [Defendant] is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.").

Intentionality. Both the ECPA and CIPA Sections 631 and 632 require an *intentional* interception or eavesdropping. But Plaintiffs fail to plead allegations that Nourish engaged in any *intentional* interception or eavesdropping of Plaintiffs' data. To plead intent, Plaintiffs must plead facts showing that Nourish "acted consciously and deliberately" in supposedly allowing third parties to intercept communications that are in transit. *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015). Plaintiffs' allegations here directly undermine any inference of intent to intercept or eavesdrop, as the Complaint alleges that the Google Tracking Tools are designed to record certain online activity like "clicks." Compl. ¶ 31. Thus, the Complaint fails "to set forth specific factual circumstances that make plausible [Nourish's] intent to record a confidential communication." Ex. 16, *Vartanian v. VW Credit, Inc.*, No. 2:11-CV-10776, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012).

### 3. Plaintiffs do not plausibly allege that they did not consent to the data collection.

Plaintiffs' Wiretap Claims (Counts VII and VIII) also fail because Plaintiffs do not

plausibly plead facts that they did not consent to any data collection. As discussed above, Plaintiffs also agreed, pursuant to Nourish's Privacy Policy, that their information could be shared with third parties, including Google. *See supra*, Privacy Policy. "Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims." Ex. 17, *Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021).

Agreements made plainly available via hyperlinks are treated as binding contracts and "users are bound by the website's terms by merely navigating or using the website," Ex. 18, *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020), even if they do not bother to read those terms, Ex. 19, *PDC Lab'ys, Inc. v. Hach Co.*, No. 09-1110, 2009 WL 2605270, at *2 (C.D. Ill. Aug. 25, 2009) ("Whether a party has actually read terms and conditions . . . does not affect their accent [sic] or the terms' enforceability.").

Plaintiffs claim that they "never authorized Defendant to disclose any aspect of [their] communications with Defendant through the Website to third parties." Compl. ¶ 19 at 5, ¶ 4 at 6, ¶ 10 at 7. Plaintiffs also allege—contrary to the language of the Privacy Policy—that "Nourish tells its users in its privacy policy that it would keep their personal information private and not share that information with others." *Id.* ¶ 4 at 2; *see also id.* ¶ 105. But these allegations are not plausible given the clear language of the Privacy Policy. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (plaintiff may not evade dismissal "simply by failing to attach to his complaint a document that proved that his claim had no merit"). Plaintiffs' consent to the disclosure bars their claims. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal based on consent where defendant's website's "Terms and Policies make no . . . assurance" that the information would not be shared with third parties). Thus, contrary to Plaintiffs' assertions,

Plaintiffs were provided clear notice of precisely what type of data was being disclosed.

**B. Plaintiffs' common law invasion of privacy claim (Count I) should be dismissed.[11]**

"To state a cause of action for public disclosure of private facts, plaintiffs must plead and prove that (1) publicity was given to the disclosure of private facts, (2) the facts were private and not public facts, *and* (3) the matter made public would be highly offensive to a reasonable person." Ex. 20, *Haynes v. Alfred A. Knopf, Inc.*, No. 91 C 8143, 1993 WL 68071, at *4 (N.D. Ill. Mar. 10, 1993), *aff'd*, 8 F.3d 1222 (7th Cir. 1993). "[F]or a statement to be highly offensive, a defendant must have known that a plaintiff, as a reasonable person, would have been justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Chang Hyun Moon v. Kang Jun Liu*, 44 N.E.3d 1134, 1141 (Ill. App. Ct. 2015) (emphasis omitted). The information disclosed must be "facially revealing, compromising or embarrassing." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1018 (Ill. App. Ct. 2004). Plaintiffs have failed to adequately plead facts clearing this high bar. *See In re Trans Union Corp. Priv. Litig.*, 211 F.R.D. 328, 343–44 (N.D. Ill. 2002) (dismissing privacy claim when plaintiffs did not plead factual detail necessary to show actions were "highly offensive" and included only conclusory allegation that "disclosure and sale of such private facts and information is one that is offensive and objectionable to a reasonable person of ordinary sensibilities"). At most, Plaintiffs have alleged that the fact they scheduled an appointment with a dietitian was disclosed. *See supra* Section II.A.1. This is not "highly offensive."

Separately, the public disclosure of private facts requires that the "communication must be more than that made to a small group; rather, the communication must be made to the public at

[11] For the common-law claims asserted in the Complaint (Counts I–VI), California law is generally in accord with Illinois law as to the pleading standards at issue in this Motion, except where noted. Nourish therefore cites Illinois law for efficiency, and reserves all arguments as to choice-of-law analysis.

large." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) (cleaned up). Even disclosures to entities like Facebook or Google are not disclosures "to the public at large." *Id.*; *see also Roehrborn v. Lambert*, 660 N.E.2d 180, 184 (Ill. App. Ct. 1995) (noting that "'publicity' . . . means communicating the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge"). Plaintiffs have not alleged that any data was disclosed to the public. They instead allege that the data was disclosed only to Google. Compl. ¶ 9 at 3, ¶ 12 at 4. Thus, this claim should be dismissed.

To the extent Plaintiffs bring their claim based on intrusion upon seclusion, that claim fails. Illinois courts have held that "disclosures of private personal information do not support a claim for unauthorized intrusion." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (cleaned up), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023); *see also In re Trans Union Corp. Priv. Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004) (allegations that defendant "wrongfully distributed . . . information to third parties . . . does not support a claim for unauthorized intrusion"); *Hannant*, 2025 WL 2413894, at *15 ("Plaintiff voluntarily utilized Defendant's Online Platforms, thereby volunteering the information which she asserts was wrongfully disclosed. Courts in Illinois have routinely found that such subsequent disclosures cannot support an intrusion upon seclusion claim."). Courts have dismissed intrusion upon seclusion claims where the alleged harm is the "alleged disclosure of the [plaintiff's] private health information" where, as here, "the allegedly harmful intrusion here, if any, was accomplished by third parties." *Kurowski*, 683 F. Supp. 3d at 849; *see also* Ex. 21, *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023) (dismissing intrusion upon seclusion claim where "Plaintiff is complaining about what she thinks [defendant] told Facebook" thus "her complaints are with the publication, and not any intrusion, which she probably initiated"). When "third-party cookies are the

mechanism by which the [alleged] intrusion is carried out," then the defendant "cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of." *Kurowski*, 683 F. Supp. 3d at 849. Plaintiffs cannot allege any intrusion on seclusion because Nourish was the intended recipient of the information.

### C. Plaintiffs' breach of implied contract claim (Count V) should be dismissed.

#### 1. Plaintiffs' claim fails because an express contract governs.

Plaintiffs cannot bring an implied contract when there is an express contract. *Archon Constr. Co. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017) ("[I]f an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law."). "An implied contract arises where the intention of the parties is not expressed but an agreement in fact creating an obligation is implied or presumed from their acts—in other words, where circumstances under common understanding show a mutual intent to contract." Ex. 22, *Arwa & Change Advocs. LLP v. Smith LaCien LLP*, No. 24 CV 6620, 2025 WL 1807939, at *5 (N.D. Ill. July 1, 2025) (quotation marks omitted). Here, there is an agreement—the Terms of Use to which Plaintiffs agreed when submitting information. *See supra* Section II.A.3. This alone dooms their claim.

Separately, Plaintiffs' factual allegations are contradicted by material they cite. Plaintiffs allege that "as Defendant does not disclose its use of Google's Tracking Tools, Plaintiffs and Class Members could not have been reasonably expected to review any of Google's privacy statements in connection with their use of the Website." Compl. ¶ 21 at 10. This is inaccurate. *See Tierney*, 304 F.3d at 738. Nourish's Privacy Policy, which is plainly available on the Website, states the opposite: "We share your Personal Information with third parties to help us use your Personal Information, as described above. We use Google Analytics to help us understand how our customers use the [Nourish website] -- you can read more about how Google uses your Personal

Information here. You can also opt-out of Google Analytics here." *See supra*, Privacy Policy.

### 2. Plaintiffs also cannot allege actionable contract damages.

Plaintiffs' implied contract claim should be dismissed for a separate reason: Plaintiffs fail to allege that they "suffered actionable contract damages." Ex. 23, *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23 CV 1108, 2024 WL 182211, at *5 (N.D. Ill. Jan. 17, 2024). "[T]o state a claim for breach of contract, one must be able to prove actual damage." *TAS Distrib. Co. v. Cummings Eng'g Co.*, 491 F.3d 625, 631 n.6 (7th Cir. 2007). "Merely showing that a contract has been breached without demonstrating actual damage does not suffice." *Id.* at 631.

Here, Plaintiffs' Complaint is "devoid of any allegations that [any] of the named plaintiffs suffered any monetary damages cognizable under state law as a result" of the alleged disclosure to Google. *Wittmeyer*, 2024 WL 182211, at *5. Under Illinois law, "[m]oney out of pocket is a standard understanding of actual damages in contract law." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018). But the Complaint lacks any allegations that Plaintiffs suffered any out-of-pocket injury from the alleged disclosure to Google. Compl. ¶¶ 159–67. Instead, the Complaint states in conclusory fashion that "Plaintiffs and Class Members sustained damages." *Id.* ¶ 164. Nor can Plaintiffs rely on "lost benefit-of-the bargain allegations," as "Illinois has declined to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages." *Wittmeyer*, 2024 WL 182211, at *6 (cleaned up). Because Plaintiffs have not alleged actionable contract damages, their implied contract claim cannot proceed.

## D. Plaintiffs' duty-based claims for breach of fiduciary duty and negligence (Counts III and IV) should be dismissed.

### 1. Plaintiffs' fiduciary duty claim (Count III) fails.

Plaintiffs' fiduciary duty claim fails because Nourish owed no fiduciary duty to Plaintiffs. "To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove

(1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *In re Est. of Lis*, 847 N.E.2d 879, 885 (Ill. App. Ct. 2006). "A fiduciary relationship does not arise simply because one party trusts the other, and a slightly dominant business position does not operate to turn a formal contractual relationship into a fiduciary relationship." *In re Tecfidera Antitrust Litig.*, 791 F. Supp. 3d 852, 871 (N.D. Ill. 2025) (cleaned up). Instead, "a fiduciary duty arises either as a matter of law or by special circumstances," such as when "one party is dominated by the other." *Id.* (quotation marks omitted). "[A] contractual relationship alone does not normally create a fiduciary duty." Ex. 24, *Ogdon v. Hoyt*, No. 04 C 2412, 2005 WL 66039, at *8 (N.D. Ill. Jan. 11, 2005) (collecting cases).

No fiduciary relationship existed between Nourish and users of its Website, either as a matter of law or due to special circumstances. Plaintiffs allege that "[i]n light of the special relationship between Defendant and Plaintiffs," Nourish had a fiduciary duty "to keep secure their Sensitive Health Information private." Compl. ¶¶ 146–47. But fiduciary duties based on "the existence of a particular relationship" cover only a narrow set of circumstances, "such as an attorney-client or principal-agent relationship." *Ogdon*, 2005 WL 66039, at *7. No such relationship exists here, and the Complaint does not allege one. Entering information into a website that connects individuals to dietitians does not create a "special relationship."

To the contrary, "neither the exchange of confidential information nor the existence of a formal business relationship gives rise to fiduciary obligations." Ex. 25, *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-CV-7619, 2016 WL 7409916, at *5 (N.D. Ill. Dec. 22, 2016). "[S]imply trusting another party to maintain 'confidential' information is also insufficient to create a fiduciary duty." *Id.* A plaintiff may not "improperly use the fiduciary duty a treating physician owes their patients to bootstrap into Illinois law a fiduciary duty owed to patients by the healthcare

facility at which their treating physician practices." Ex. 26, *In re Lurie Children's Hosp. Data Sec. Litig.*, No. 24-CV-05503, 2025 WL 2754760, at *11 (N.D. Ill. Sept. 27, 2025). Courts similarly reject the argument that a fiduciary duty applies to the "administrative and information technology staff in charge of maintaining patient information." *Id.*; Ex. 27, *Doe v. Genesis Health Sys.*, No. 23-CV-4209-JES-JEH, 2024 WL 3890164, at *13 (C.D. Ill. Aug. 21, 2024) ("Plaintiff fails to support that any court in Illinois has found that a healthcare facility has a fiduciary duty in relation to patients' private information."). Without a fiduciary duty, there is no claim.

**2. Plaintiffs' negligence claim (Count IV) fails.**

**a. Plaintiffs' negligence claim fails the economic loss doctrine.**

Plaintiffs' negligence claim fails because they cannot bring a claim solely for economic loss in tort. "Decades ago, the Illinois Supreme Court held that plaintiffs cannot recover for a solely economic loss in an action for strict liability or negligence." *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 858–59 (N.D. Ill. 2022) (quotation marks omitted). Tort claims must be premised on "losses occasioned by personal injuries or damage to one's property," not strictly economic losses. *Id.* (quotation marks omitted). The "economic loss doctrine" "restrict[s] tort liability between parties who had already entered into a contract covering the same ground." *Id.* at 859. "[O]ne cannot obtain purely economic damages in an action sounding in negligence or strict liability in tort." *Id.* (cleaned up). For example, the economic loss doctrine applies to bar data breach claims when plaintiffs have "not suffered personal injury or property damage." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011).

Although "the [economic loss] doctrine applies only where the duty of the party performing the service is defined by a contract executed with the client," Ex. 28, *Olson v. Ferrara Candy Co.*, No. 1-24-1126, 2025 IL App (1st) 241126, ¶ 53 (Ill. App. Ct. June 25, 2025), any obligation Nourish had to safeguard Plaintiffs' data was dictated by the Privacy Policy, the parties' express

contract. That contract governs and, therefore, the economic loss doctrine bars Plaintiffs' negligence claim. *See Genesis Health Sys.*, 2024 WL 3890164, at *12 (dismissing negligence claim about disclosure of protected health information based on the economic loss doctrine when an express contract governed); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020) (dismissing negligence claims in data breach case based on economic loss doctrine); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 816–17 (7th Cir. 2018) (affirming dismissal of negligence claim based on theory that defendant "had a common law duty to safeguard customers' track data" because "Illinois would probably apply the economic loss rule to bar recovery").

**b. Nourish did not owe a duty to Plaintiffs.**

Plaintiffs' negligence claim also fails for the independent reason that Plaintiffs do not allege any duty owed by Nourish. Plaintiffs claim that Nourish's actions violated HIPAA, Compl. ¶¶ 67–95, but "an alleged HIPAA violation cannot form the basis of a negligence claim" because HIPAA has no private right of action, Ex. 29, *Austin v. Atlina*, No. 20-CV-6363-YGR, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021); *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) ("HIPAA does not furnish a private right of action."); *Haywood v. Novartis Pharms. Corp.*, 298 F. Supp. 3d 1180, 1190–91 (N.D. Ind. 2018) (dismissing duty-based claim because "there is no private right of action under [HIPAA]"). Likewise, Plaintiffs suggest that Nourish owed them some further duty as the recipient of their purported health information, but again, no duty arises from the receipt of personal information. *See* Ex. 30, *Doe v. Genesis Health Sys.*, No. 4:23-CV-04209-JEH, 2025 WL 1000192, at *4 (C.D. Ill. Mar. 18, 2025) (dismissing negligence claim because "[t]he Illinois Supreme Court has not recognized a duty to safeguard personal information").

**c. Plaintiffs have not alleged harm.**

Plaintiffs' claim also fails for a third reason—they do not allege any appreciable, nonspeculative, present harm purportedly caused by the breach of Nourish's alleged duty. *See Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 272 (Ill. 1995) (holding that "[a] threat of future harm, not yet realized, is not actionable" in a claim for negligence). "Negligence without harm does not make a cause of action." *Khan v. BDO Seidman, LLP*, 948 N.E.2d 132, 165 (Ill. App. Ct. 2011), *aff'd sub nom.*, *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020 (Ill. 2012). The alleged diminution in value, or loss of personal information, absent specific allegations of misuse or actual harm, is not sufficient to sustain Plaintiffs' claims. "Until the defendant's wrongful or negligent act produces injury to the plaintiff's interest by way of loss or damage, no cause of action accrues." *Berry v. City of Chicago*, 181 N.E.3d 679, 688 (Ill. 2020) ("an increased risk of harm is not, for purposes of tort law, an injury"). Instead, Plaintiffs merely allege that they have suffered damages by having their personal information "accessed, stored, and disseminated without their knowledge or consent." Compl. ¶ 156. This is insufficient. And it is particularly so given the low sensitivity (if any) of appointment data (as opposed to actual health information).

**E. Plaintiffs' breach of confidence (Count II) and unjust enrichment (Count VI) claims should be dismissed because the claims do not exist under Illinois law.**

Plaintiffs' claims for breach of confidence and unjust enrichment under Illinois law are nonstarters. Neither exists as an independent tort, and both should be dismissed for that reason.

**1. Plaintiffs' breach of confidence claim (Count II) should be dismissed.**

Plaintiffs' breach of confidence claim alleges that "[m]edical providers have a duty to their patients, potential patients, and former patients to keep non-public medical information completely confidential" and that Nourish breached this supposed duty by disclosing "the contents of their communications exchanged with Defendant to third parties, including Google." Compl. ¶¶ 136,

139. These allegations fail because "Illinois courts have not recognized a cause of action for breach of confidentiality for the unauthorized disclosure of a patient's medical information," and federal courts have "further declined the . . . invitation to recognize one." *Kurowski*, 683 F. Supp. 3d at 845. A "common law cause of action for breach of confidentiality remains unavailable in Illinois." *Id.*; *see Dinerstein v. Google, LLC*, 73 F.4th 502, 516 n.4 (7th Cir. 2023) (declining to "recognize a novel claim for breach of medical confidentiality"); Ex. 31, *Juenger v. Deaconess Health Sys., Inc.*, No. 3:24-CV-2332-NJR, 2025 WL 2780221, at *7 (S.D. Ill. Sept. 30, 2025) (same).

Regardless, any claim for breach of confidence fails to state a claim. For starters, Nourish owed no duty to Plaintiffs to not use the Google Analytics feature that is expressly described and disclosed in the Privacy Policy. *See Doe*, 2025 WL 1000192, at *4. Any reasonable person would understand that, by using the Nourish Website, the Google Analytics feature would be in use. Additionally, even in jurisdictions that recognize the tort of breach of confidence, like California, the plaintiff must "demonstrate: (1) plaintiff conveyed confidential and novel information to the defendant; (2) defendant knew the information was being disclosed in confidence; (3) defendant understood the confidence was to be maintained; and (4) there was a disclosure or use in violation of the understanding." *Friedman v. DirecTV*, 262 F. Supp. 3d 1000, 1006 (C.D. Cal. 2015).

Here, Plaintiffs have not alleged that Nourish knew the information was being disclosed in confidence, that Nourish understood confidence was to be maintained, or that there was any disclosure in violation of Nourish's understanding of the parties' understood confidentiality. The Privacy Policy demonstrates that Nourish had just the opposite understanding. Moreover, Plaintiffs have not and cannot allege anything "novel" about the allegedly disclosed information. The duty in a breach of confidence claim applies only to the disclosure of "confidential and *novel* information." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) (emphasis added). Plaintiffs

have not and cannot allege anything "novel," meaning something that "has never been done before," about scheduling an appointment with a dietitian. *See Friedman*, 262 F. Supp. 3d at 1006.

**2. Plaintiffs' unjust enrichment claim (Count VI) should be dismissed.**

Plaintiffs' unjust enrichment claim also fails. Plaintiffs plead their unjust enrichment claim "in the alternative to their breach of implied contract claim," Compl. ¶ 168, and allege that Plaintiffs "conferred a monetary benefit on Defendant in exchange for healthcare services" and Nourish "enriched itself by obtaining the inherent value of Plaintiffs'" information, *id.* ¶¶ 169, 171.

But "unjust enrichment is not a separate cause of action" in Illinois. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)); *see also Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("Unjust enrichment is not a separate cause of action under Illinois law."). "Rather, it's a condition brought about by fraud or other unlawful conduct." *Vanzant*, 934 F.3d at 740. That alone warrants dismissal of the unjust enrichment claim.

Independently, unjust enrichment (*i.e.*, quantum meruit) is a remedy (again, not a claim) where there is no contract. *Buschauer v. Columbia Coll. Chi.*, 579 F. Supp. 3d 1045, 1049 (N.D. Ill. 2022). Accordingly, unjust enrichment claims, like implied contract claims, fail in the face of an express contract. *See id.*; *supra* Section II.C.1. Indeed, Plaintiffs' own allegations make clear that the claim is based on the same allegations as, and plead in the alternative to, Plaintiffs' implied contract claim. Compl. ¶ 168. It thus fails for the same reasons.

## CONCLUSION

For these reasons, Nourish respectfully requests that the Court grant this Motion and dismiss Plaintiffs' Complaint.

Dated: January 12, 2026

Respectfully submitted,

*/s/ David A. Gordon*
David A. Gordon
D. Samuel Gorsche
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7159
dgordon@sidley.com
sgorsche@sidley.com

*Counsel for Defendant Nourish, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 12, 2026, the foregoing document was filed electronically using the ECF system, which will send notification of such filing to all counsel of record at their email addresses on file with the Court.

*/s/ David A. Gordon*
David A. Gordon