**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| ARISSA PODRAZA, SUSAN COLBY, and JESSICA KELLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOURISH, INC.,<br><br>Defendant. | Case No. 3:25-cv-50356<br><br>Honorable Iain D. Johnston<br><br>Honorable Margaret J. Schneider |

**DEFENDANT NOURISH, INC.'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I. Plaintiffs fail to establish personal jurisdiction over Nourish. ..........................................2

A. There was no purposeful availment or direction. ..................................................2

B. The claims also do not arise out of or relate to Nourish's contacts with Illinois.....4

C. Jurisdiction would not comport with fair play and substantial justice.....................5

II. Plaintiffs fail to plead a plausible claim for relief. ............................................................6

A. Plaintiffs' Wiretap Claims (Counts VII and VIII) should be dismissed. ................6

1. The ECPA's consent provision applies, with no crime-tort exception. .......6

2. Plaintiffs fail to plead the elements of the Wiretap Claims. ........................9

3. Plaintiffs consented to the data collection. ...............................................10

B. Plaintiffs' invasion of privacy claim (Count I) should be dismissed. ....................11

C. Plaintiffs' breach of implied contract claim (Count V) should be dismissed. .......12

D. Plaintiffs' breach of fiduciary duty claim (Count III) should be dismissed. .........13

E. Plaintiffs' negligence claim (Count IV) should be dismissed. .............................14

F. Plaintiffs' unjust enrichment claim (Count VI) should be dismissed. ...................15

CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................3

*Agnew v. NCAA*,
683 F.3d 328 (7th Cir. 2012) ....................10

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................8

*Archon Constr. Co. v. U.S. Shelter, LLC*,
78 N.E.3d 1067 (Ill. App. Ct. 2017) ....................13

*Arwa & Change Advocs. LLP v. Smith LaCien LLP*,
No. 24 CV 6620, 2025 WL 1807939 (N.D. Ill. July 1, 2025) ....................13

*be2 LLC v. Invanov*,
642 F.3d 555 (7th Cir. 2011) ....................4

*Boykin v. Ill. Dep't of Juv. Just.*,
No. 23-CV-4109, 2025 WL 640050 (N.D. Ill. Feb. 27, 2025) ....................2

*Brahm v. Hosp. Sisters Health Sys.*,
No. 23-CV-444, 2024 WL 3226135 (W.D. Wis. June 28, 2024) ....................12, 13

*Bray v. Gamestop Corp.*,
No. 17-CV-1365, 2018 WL 11226516 (D. Del. Mar. 16, 2018) ....................13

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017) ....................3, 4

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ....................12

*C.M. v. Health Care Serv. Corp.*,
No. 24-CV-02122, 2025 WL 933847 (N.D. Ill. Mar. 27, 2025) ....................2

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................7

*Cole v. Quest Diagnostics Inc.*,
No. 25-1449, 2025 WL 3172640 (3d Cir. Nov. 13, 2025) ....................10

*Cooney v. Chi. Pub. Schs.*,
943 N.E.2d 23 (Ill. App. Ct. 2010) ....................15

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 24-CV-01475, 2025 WL 1616635 (C.D. Ill. June 6, 2025) ........................................14, 15

*Doe v. Fertility Ctrs. of Ill., S.C.*,
No. 21 C 579, 2022 WL 972295 (N.D. Ill. Mar. 31, 2022) ....................................................12

*Doe v. Genesis Health Sys.*,
No. 23-CV-04209, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)................................7, 14, 15

*Doe v. Genesis Health Sys.*,
No. 23-CV-4209, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024).......................................11, 14

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)......................................................................................6, 7

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................................................11

*G Six Consulting LLC v. Mullett*,
No. 2025 CV 2166, 2025 WL 2522757 (N.D. Ill. Sept. 2, 2025).............................................2

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)..........................................6

*Hannant v. Culbertson*,
No. 24-CV-04164, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025).............................................9

*Hernandez-Silva v. Instructure, Inc.*,
No. 25-CV-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)...........................................10

*Illinois v. Hemi Grp. LLC*,
622 F.3d 754 (7th Cir. 2010) .......................................................................................................5

*Jones v. Connors*,
No. 11 C 8276, 2012 WL 4361500 (N.D. Ill. Sept. 20, 2012)..........................................10, 14

*Jones v. UrbanStrong, LLC*,
No. 23-CV-03445, 2024 WL 774907 (N.D. Ill. Feb. 26, 2024) .............................................15

*Juenger v. Deaconess Health Sys., Inc.*,
No. 24-CV-2332, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025).............................................15

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ................................................................................. 11, 12

*Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*,
No. 16-CV-7619, 2016 WL 7409916 (N.D. Ill. Dec. 22, 2016).............................................14

*In re Lurie Children's Hosp. Data Sec. Litig.*,
No. 24-CV-05503, 2025 WL 2754760 (N.D. Ill. Sept. 27, 2025) ..........14

*Mackey v. Sarroca*,
35 N.E.3d 631 (Ill. App. Ct. 2015) ..........14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..........6

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*,
623 F.3d 440 (7th Cir. 2010) ..........4

*Nguyen v. Abbott Lab'ys, Inc.* (*Nguyen I*),
No. 24 CV 8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ..........9

*Nguyen v. Abbott Lab'ys, Inc.* (*Nguyen II*),
No. 24 CV 8289, 2026 WL 579206 (N.D. Ill. Mar. 2, 2026) ..........7, 8, 9

*Perkins v. Goodyear Tire & Rubber Co*.,
No. 22-1521, 2025 WL 81568 (W.D. Pa. Jan. 13, 2025) ..........5

*Portillo v. Nebula Genomics, Inc.*,
No. 24-CV-9894, 2025 WL 2084215 (N.D. Ill. July 24, 2025)..........4

*Roe v. Amgen Inc.*,
No. 23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024)..........6

*Roper v. Rise Interactive Media & Analytics, LLC*,
No. 23 CV 1836, 2023 WL 7410641 (N.D. Ill. Nov. 9, 2023)..........12

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
869 F.3d 568 (7th Cir. 2017) ..........14

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020)..........13

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ..........7

*uBID, Inc. v. GoDaddy Grp., Inc.*,
623 F.3d 421 (7th Cir. 2010) ..........3

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*,
No. 23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024)..........13

**Statute**

18 U.S.C. § 2511..........7

## INTRODUCTION

Plaintiffs' Response, ECF No. 25 (the "Response" or "Resp."), confirms that the Motion to Dismiss, ECF No. 24 (the "Motion" or "Mot."), should be granted for several independent reasons. *First*, none of Nourish's[1] alleged conduct—which concerns a national Website's use of Tracking Tools—was purposefully directed at Illinois or arises out of or related to its contacts with Illinois, which deprives the Court of personal jurisdiction over Nourish.

*Second*, Plaintiffs' continued attempt to recharacterize the routine act of scheduling a consultation with a dietitian as the disclosure of "Sensitive Health Information" is both unpersuasive and unsupported by their own caselaw. Plaintiffs do not allege that Nourish obtains, let alone discloses, a user's medical history, medical condition, or other genuinely sensitive information; the alleged transmission here consists of nothing more than an IP address paired with the fact, date, dietitian name, and location of a requested dietitian consultation, which is not actionable under federal and California wiretap statutes or Illinois law. The collected data is not protected health information under HIPAA. Nor is it "highly offensive" private material under Illinois law. An interest in a dietitian in today's America is neither noteworthy nor anywhere close to disclosing a particular condition, and Plaintiffs make no effort to argue otherwise. Nor do Plaintiffs meaningfully compare the data collected here to those at issue in the cases they cite, and for good reason: it is not the same. And, separately, Plaintiffs consented to it.

Plaintiffs' common-law claims are even further afield. Plaintiffs stretch Illinois law by repackaging an express Privacy Policy into an implied contract, transforming a website-user communication into a physician-patient fiduciary duty, and alleging negligence where the Seventh Circuit has held there is no established duty. This Court should grant Nourish's Motion.

[1] Capitalized terms not defined herein have the meanings given to them in the Motion.

## ARGUMENT

### I. Plaintiffs fail to establish personal jurisdiction over Nourish.

#### A. There was no purposeful availment or direction.

Nourish explained that the Court lacks specific jurisdiction because Plaintiffs' "only alleged Illinois contact is the Website that is accessible nationwide." Mot. at 7. Recognizing that the Complaint does not support purposeful availment or direction, Plaintiffs now rely on *new* jurisdictional assertions raised for the first time in their Response. They now argue that Nourish purposefully directed its activities at Illinois by (1) offering to connect residents with Illinois-licensed dietitians or allowing filtering by state, (2) employing dietitians in Illinois, and (3) marketing to dietitians in a manner that supposedly reflects awareness of Illinois law. *See* Resp. at 5–7. That effort is both procedurally improper[2] and substantively flawed because the newly asserted contacts do not establish purposeful direction as a matter of law. At best, such unrelated contacts would be relevant—albeit woefully deficient—in establishing general jurisdiction, an assertion Plaintiffs do not even advance, and have waived.[3]

The conduct at issue is the alleged nationwide installation and use of Tracking Tools on the Website. *See* Compl. ¶ 11 at 4, ¶ 110 (seeking to represent a nationwide class). Specific jurisdiction must tie local action to the alleged misconduct. But Plaintiffs do not allege that any Illinois employees installed or configured the Tracking Tools, that the Tracking Tools were

---

[2] *See* Ex. 1, *C.M. v. Health Care Serv. Corp.*, No. 24-CV-02122, 2025 WL 933847, at *8 n.13 (N.D. Ill. Mar. 27, 2025) ("It is well established that plaintiffs cannot amend a complaint through a response to a motion to dismiss."); *see also* Ex. 2, *G Six Consulting LLC v. Mullett*, No. 2025 CV 2166, 2025 WL 2522757, at *3 (N.D. Ill. Sept. 2, 2025) (applying same in Rule 12(b)(2) context). Plaintiffs also have not even attempted to show these new allegations with competent evidence.

[3] Nourish argued in the Motion that the Court lacks general jurisdiction over Nourish because it is not incorporated in Illinois, does not have its principal place of business in Illinois, and is not essentially at home in Illinois. Mot. at 5. Plaintiffs do not address general jurisdiction in their Response, *see* Resp. at 4–10. "[F]ailure to respond to an opposing party's argument implies concession." Ex. 3, *Boykin v. Ill. Dep't of Juv. Just.*, No. 23-CV-4109, 2025 WL 640050, at *4 (N.D. Ill. Feb. 27, 2025).

tailored to Illinois users, or that the Tracking Tools targeted Illinois in any distinct way.

Courts in this Circuit have rejected purposeful availment and direction under similar circumstances where the challenged technology was applied uniformly and not directed at Illinois. *See* Mot. at 8 (citing *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 721–22 (S.D. Ill. 2020) (no purposeful availment or direction when plaintiffs alleged that defendants applied their technology to every call at call centers, "not just those calls initiated by Illinois residents")).

Plaintiffs' cited authorities do not compel a different result.[4] Those cases involved deliberate exploitation of the forum tied to the challenged conduct, such as shipping products or targeting advertisements specifically to a particular state, neither of which is present here.[5] *GoDaddy* is instructive. *See* Resp. at 6–7 (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 (7th Cir. 2010)). It relied not only on national advertising, but *also* "physical ads in particular Illinois venues," including Wrigley Field, then-US Cellular, and the United Center. *GoDaddy*, 623 F.3d at 427–28, 430–33. To the extent Plaintiffs misread *GoDaddy* to rely solely on national advertising, that is not only contrary to its own holding, but also does not survive the Supreme Court's later mandate in *Bristol-Myers Squibb Co. v. Superior Court*, rejecting as "spurious" an attempt to lessen specific jurisdiction requirements because of "extensive forum contacts that are

[4] *See* Resp. at 5–7 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 772–74 (1984) (defendant sold thousands of copies of the allegedly libelous publication in the forum state each month, and the challenged conduct was the very product distributed there); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (defendant sold and shipped allegedly unlawful products directly into the forum state); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–58 (7th Cir. 2010) (same)).

[5] Plaintiffs claim that *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), Mot. at 7, is inapposite because the case "turned on the fact that the products sold and shipped into Indiana were unrelated to the trademark infringement claim," Resp. at 6. Although the Seventh Circuit found "no evidence that [the defendant's sales to the forum state] had any connection with th[e] litigation," a principle that separately forecloses Plaintiffs' specific jurisdiction argument, *see infra* Section I.B, Plaintiffs ignore the court's determination that the defendant did not target the forum state's market even though it "maintain[ed] an email list to allow it to shower past customers and other subscribers with company-related emails" because "[t]he connection between the place where an email is opened and a lawsuit is entirely fortuitous," and the defendant did not "target[] residents of a specific state" with "geographically-restricted online ads." *Advanced Tactical*, 751 F.3d at 801–03.

unrelated to [plaintiff's] claims." 582 U.S. 255, 264 (2017); *accord* Ex. 4, *Portillo v. Nebula Genomics, Inc.*, No. 24-CV-9894, 2025 WL 2084215, at *5 (N.D. Ill. July 24, 2025) (no allegations of "marketing efforts in Illinois") (citing *be2 LLC v. Invanov*, 642 F.3d 555, 559 (7th Cir. 2011), as distinguishing *GoDaddy* because "record did not show that defendant deliberately targeted or exploited the Illinois market"); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (distinguishing "deliberate and continuous exploitation of the market" in *GoDaddy*).[6] Plaintiffs have not met their burden.

**B. The claims also do not arise out of or relate to Nourish's contacts with Illinois.**

As an independent basis for dismissal, Plaintiffs must show that their claims "arise out of or relate to" Nourish's forum-directed contacts. Mot. at 9–10. Plaintiffs again have failed to meet their burden. Resp. at 8. Plaintiffs argue that two of the Plaintiffs would not have visited the Website if Nourish did not employ and offer appointments with dietitians licensed in Illinois. *Id.* But that does not establish the required nexus between Nourish's forum contacts *and Plaintiffs' claims*. Mot. at 9 (citing cases). The relevant question is not why Plaintiffs chose to access the Website, but whether the challenged conduct itself (the *alleged disclosure of data* through the Tracking Tools) is connected to Nourish's specifically Illinois-directed activity. Plaintiffs ignore the cases cited in the Motion holding that, in similar privacy cases, jurisdiction requires a nexus between the forum contacts and challenged practice. *See* Mot. at 9–10 (citing cases).

This lawsuit challenges Nourish's alleged disclosure of data as a result of the Tracking Tools on the Website. Plaintiffs do not allege that those tools were implemented in Illinois, configured by Illinois personnel, or tied to any Illinois-specific marketing or operations. Nor do they allege that the tracking practice was part of any Illinois-specific service offering. Instead, the

[6] Plaintiffs fail to address these relevant comparisons in their attempted distinctions of *be2 LLC* and *Mobile Anesthesiologists*. Resp. at 6; *see* Mot. at 7.

Complaint describes a nationwide Website that operates the same way regardless of a user's location. *See* Compl. ¶ 11 at 4, ¶ 110. The alleged data transmissions would have occurred in the same manner whether Plaintiffs were located in Illinois or any other state. Plaintiffs' theory would mean that any company that uses a business tool like the Tracking Tools would be subject to personal jurisdiction from anywhere a user accesses the Website, which is not the law.[7]

The new Illinois contacts Plaintiffs identify in their Response—employing dietitians licensed in Illinois, allowing users to filter by state, and providing remote appointments to Illinois residents—have nothing to do with the alleged misconduct in the Complaint. This case is not about the provision of dietitian services or employment relationships. It is about the alleged disclosure of data through a nationwide Website. Again, courts have cautioned that specific jurisdiction cannot rest on the aggregation of unrelated forum contacts. *See* Mot. at 8 n.6 (citing cases).[8] The relationship between Illinois-directed contacts and the asserted claims is lacking.

**C. Jurisdiction would not comport with fair play and substantial justice.**

As another fatal flaw, exercising jurisdiction would not be fair. Mot. at 10–12. Although Nourish addressed all five fairness factors, *id.*, Plaintiffs' Response concedes three, mentioning only two: the burden on Nourish and interests of Illinois, Resp. at 9–10. And those arguments do not overcome the central problem: the challenged conduct, the Website's use of Tracking Tools, is alleged to be a uniform, nationwide integration, not directed at Illinois in any distinct way. Allowing jurisdiction would mean Nourish could be sued in any state where a resident accessed the Website and later challenged the same Tracking Tools. Although Illinois has an interest in

[7] Ex. 5, *Perkins v. Goodyear Tire & Rubber Co.*, No. 22-1521, 2025 WL 81568, at *4 (W.D. Pa. Jan. 13, 2025) ("Under Plaintiffs' logic, every company that uses Session Reply Code software would be subject to personal jurisdiction anywhere . . . a user could access the internet. That is not the law.").

[8] Plaintiffs' reliance on *Hemi Group*, Resp. at 8, illustrates why Plaintiffs cannot meet their burden. That defendant sold and shipped cigarettes into Illinois and structured its operations to serve Illinois customers, and the State's claims arose from those very cigarette sales practices. *Hemi Grp.*, 622 F.3d at 758–59.

providing a forum for its residents, that interest cannot substitute for a meaningful, forum-specific connection between the defendant's forum-directed conduct and the claim.

## II. Plaintiffs fail to plead a plausible claim for relief.

### A. Plaintiffs' Wiretap Claims (Counts VII and VIII) should be dismissed.

#### 1. The ECPA's consent provision applies, with no crime-tort exception.

Plaintiffs concede that Nourish consented to the purported interception by the Google Tracking Tools, Resp. at 12, so the ECPA's one-party consent provision applies, *id.* at 12, 16–19; *see* Mot. at 13. Instead, Plaintiffs argue that Nourish's alleged violation of HIPAA satisfies the crime-tort exception. Resp. at 12, 16–19. But the crime-tort exception applies only when "the *primary motivation* or a *determining factor* in the [defendant's] actions has been to injure plaintiffs tortiously." Mot. at 13 (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023)). Courts have held that the crime-tort exception does not apply when the defendant's purpose is "plainly . . . to make money." *Id.* at 14 (quoting Ex. 6, *Rodriguez v. Google LLC*, No. 20-CV-04688, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021)); *see also* Ex. 7, *Roe v. Amgen Inc.*, No. 23-cv-07448, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) ("crime-tort exception is inapplicable where a defendant's primary motivation is to make money"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (same); Ex. 8, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (same); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (same).

As Nourish acknowledged, Mot. at 14 n.8, some courts have held that that the crime-tort exception applies when a HIPAA violation is alleged, even when any disclosure was done for purposes of financial gain, Resp. at 18–19. But these decisions ignore that the *primary* motivation must be to injure plaintiffs tortiously, which is not possible when any alleged disclosure was done for financial gain. The "'criminal' or 'tortious' purpose requirement is to be construed narrowly,

covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *DoubleClick*, 154 F. Supp. 2d at 515. The statute requires that the "communication is intercepted *for the purpose of* committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). "Congress's decision to include that language indicates that the 'crime-or-tort' exception requires a specific intent that the [d]efendant knew its acts were in violation of the HIPAA." Ex. 9, *Doe v. Genesis Health Sys.*, No. 23-CV-04209, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025). "Congress chose the word 'purpose' for a reason. Therefore, the offender must have as her objective a tortious or criminal result." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Without allegations of that primary motive, Plaintiffs' ECPA claim should be dismissed.

Plaintiffs make much of the holding in Ex. 10, *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025), Resp. at 16–17, which likens a violation of HIPAA to the Joker engaging in a bank robbery. Whether that analogy is fair in that case, it has nothing to do with this one. There, the defendant was alleged to have disclosed medical patients' *entire medical history* through hospital charting. *Id.* at *2. Here, as discussed below, Plaintiffs have not alleged a HIPAA violation at all; considering a visit to a dietitian is a far cry from an entire medical history, and Nourish is hardly a "supervillain." Mot. at 14–16; *see* Ex. 11, *Nguyen v. Abbott Lab'ys, Inc.* (*Nguyen II*), No. 24 CV 8289, 2026 WL 579206, at *5 (N.D. Ill. Mar. 2, 2026) ("Demonstrating interest . . . is not the same as transmitting sensitive medical information."). The facts Plaintiffs do allege are not IIHI. Plaintiffs allege that Nourish transmitted four types of information: the fact, date, dietitian name, and location of a requested dietitian consultation. Compl. ¶ 18 at 5, ¶ 3 at 6, ¶ 9 at 7. Plaintiffs allege only that an IP address together with appointment information was transmitted. Plaintiffs do not allege that they actually signed up for the Nourish service, indicating that the interaction with the Website was in an unauthenticated

state. This does not constitute IIHI. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 789, 807 (N.D. Tex. 2024); *Nguyen II*, 2026 WL 579206, at *5 ("HIPAA-protected information must be tied to a specific individual").[9] Despite claiming that *American Hospital Ass'n* is inapplicable, Resp. at 15, the court vacated the HHS Bulletin that Plaintiffs rely on in the Complaint. 738 F. Supp. 3d at 804–07; Compl. ¶¶ 87–95.[10]

Plaintiffs' alleged interactions with the Website distinguish their cited cases, which concern allegations that a person not just was considering a service, but rather that the data disclosed revealed that she was a "*patient*" with a "*medical condition*." Resp. at 14–15 (citing Ex. 12, *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084, at *1, *3 (N.D. Ill. Dec. 11, 2023) (alleged disclosure of the "particular health conditions" of a "patient"); Ex. 13, *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (alleged disclosures included "patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information"); Ex. 14, *Allen v. Midwest Express Care, Inc.*, No. 24-CV-05348, 2025 WL 2240253, at *2 (N.D. Ill. Aug. 6, 2025) ("status as a medical patient, health conditions"); Ex. 15, *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *1 (N.D. Ill. July 9, 2024) (similar)).

Here, Plaintiffs allege only that they sought an appointment with a dietitian, not that they input their reason for an appointment or even scheduled an appointment *for themselves*, and certainly not revealing their "conditions." This is insufficient to allege a HIPAA violation. Ex. 16,

[9] *Nguyen II*, 2026 WL 579206, at *5 n.4 ("Submitting a form titled 'Thank You For Joining the MyFreeStyle Pogram' or clicking a button labeled 'Start Free Trial' for a 'FreeStyle Libre Continuous Glucose Monitoring' device is 'too tenuous' to support an inference that Abbott violated HIPAA in the absence of 'information that unequivocally provides a window into an individual's personal medical history.'" (quoting *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018))).

[10] Plaintiffs' tortured, four-part process to shoehorn "dietitian" services (but even then only as part of an initial physical) into HIPAA, Resp. 13 n.8, *still* does not wrestle with the distinction between investigating the potential scheduling of a service and the actual provision of services that might reveal a condition.

*Nguyen v. Abbott Lab'ys, Inc.* (*Nguyen I*), No. 24 CV 8289, 2025 WL 2299753, at *5–6 (N.D. Ill. Aug. 8, 2025) (plaintiffs' simple request for "continuous-glucose monitoring devices" was "a step removed from the kind of medical information disclosed between a patient and their healthcare provider").[11] Just because they clicked through the initial stages of signing up for an appointment does not mean that they were transmitting Sensitive Health Information. The reason for their visit to the Website is unknown: it could have been to understand how the Website worked because they were thinking of signing up to be a dietitian, that they were a competitor, or that it was for the purpose of filing a lawsuit. *See* Ex. 17, *Hannant v. Culbertson*, No. 24-CV-04164, 2025 WL 2413894, at *4 (C.D. Ill. Aug. 20, 2025). The ECPA claim should be dismissed.[12]

**2. Plaintiffs fail to plead the elements of the Wiretap Claims.**

Plaintiffs' Wiretap Claims require them to plead that the communications' contents were intentionally intercepted while in transit. Resp. at 17. They have failed to meet their burden. Plaintiffs have not adequately alleged an interception. Mot. at 17–18. Plaintiffs contend that they have adequately pleaded the contemporaneous nature of the alleged transmissions to Google. Resp. at 20. Plaintiffs ignore their allegations to the contrary. *See*, *e.g.*, Compl. ¶ 41 ("The Pixels then combine the data received from the browser with the data acquired from the cookie, and instructs [sic] the web browser to transmit the information back to Google."), ¶ 163 (Nourish "disclos[ed] Plaintiffs' and Class Members' Sensitive Health Information to third parties like Google").

[11] The *Nguyen II* court found that "[o]rdering a *diabetes-related device* for *oneself*" would "plausibly disclose[] identifying information of an individual and their *medical condition, diabetes*." 2026 WL 579206, at *4 (emphasis added). Plaintiffs here do not allege the appointments were for themselves or were for any specific condition, much less that Nourish disclosed any condition-related information.

[12] If the Court dismisses the ECPA claim, it should decline to exercise supplemental jurisdiction over the state-law claims. Though Plaintiffs invoke jurisdiction under the Class Action Fairness Act, Plaintiffs allege their residence, not domicile, *id.* ¶ 16 at 5, ¶ 1 at 6, ¶ 7 at 7, and thus "do not adequately allege their citizenship for purposes of establishing minimal diversity." *Nguyen I*, 2025 WL 2299753, at *1 n.1, *6 (no jurisdiction where Plaintiffs' citizenship allegations were based on residence).

Plaintiffs' other allegations that the information was transmitted to Google "in real time," Compl. ¶ 32, are the same "vague and conclusory" allegations that courts have deemed "not sufficient to demonstrate any eavesdropping by third parties," Ex. 18, *Hernandez-Silva v. Instructure, Inc.*, No. 25-CV-02711, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) (allegation that data is shared "in real time" or "near-real time" is insufficient to demonstrate eavesdropping). Plaintiffs' cited cases contained allegations beyond those here and rejected in *Hernandez-Silva*. Resp. at 20.

Further, Google was a direct recipient and therefore cannot be an interceptor. Resp. at 18. Plaintiffs contend that because the communications "consist of Requests and Responses" between the user's web browser and the Website, Google was not a direct recipient. Resp. at 21. The Third Circuit recently rejected that argument. There, plaintiffs allegedly sent a "separate message" to the alleged interceptor's servers "concurrent with the communications" to the defendant. Ex. 19, *Cole v. Quest Diagnostics Inc.*, No. 25-1449, 2025 WL 3172640, at *3 (3d Cir. Nov. 13, 2025). Because the alleged interceptor was "the recipient of a direct communication from [p]laintiffs' browsers," they were "a participant in [p]laintiffs' transmissions such that [the defendant] did not aid or assist [the alleged interceptor] in eavesdropping on or intercepting such communications." *Id.*[13]

Plaintiffs argue in passing that their CIPA claim can proceed under an aiding and abetting theory. Resp. at 22. Plaintiffs failed to articulate this theory in their Complaint in a nonconclusory fashion, merely stating that Nourish "aided" Google, Compl. ¶¶ 208, 213. They may not amend their Complaint through their Response. *See Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012).

**3. Plaintiffs consented to the data collection.**

Plaintiffs agreed that their information could be shared with third parties. The Privacy Policy states, "We share your Personal Information with third parties . . . . We use Google

[13] Plaintiffs do not respond to Nourish's intentionality argument, Resp. at 19–22, waiving any basis to avoid dismissal. *See* Ex. 20, *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012).

Analytics to help us understand how our customers use the [Website] . . . . You can also opt-out of Google Analytics here." Mot. at 3. Privacy policies "can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims." *Id.* at 20 (quoting Ex. 21, *Silver v. Stripe Inc.*, No. 20-CV-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021)). The Privacy Policy makes Plaintiffs' allegations that Nourish promised to keep "their personal information private," Compl.¶ 4 at 2, implausible. Despite arguing that the Privacy Policy is an unenforceable browsewrap agreement, Resp. at 10–11, the Privacy Policy is available on each page of the Website, in the same location as on every other website, as people expect. There is no requirement that Plaintiffs read the terms. Mot. at 20. Plaintiffs' consent bars their claims.[14]

**B. Plaintiffs' invasion of privacy claim (Count I) should be dismissed.**

Plaintiffs first argue that the alleged disclosure to Google satisfies the public at large requirement. Resp. at 23. But disclosures to entities like Google are not disclosures "to the public at large." Mot. at 22 (quoting *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023)). In *Kurowski*, the defendant allegedly "surreptitiously deployed third-party source code on its website and its . . . patient portal that caused [] individually identifiable health data and communications . . . to be transmitted to Facebook, Google, and Bidtellect for advertising purposes." 683 F. Supp. 3d at 840. Even that did not constitute disclosure to the public. *Id.* at 849. Other courts agree. *See*, *e.g.*, Ex. 22, *Doe v. Genesis Health Sys.*, No. 23-CV-4209, 2024 WL 3890164, at *13 (C.D. Ill. Aug. 21, 2024) ("disclosures to Facebook" not to "public at large").

Plaintiffs' citation to *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 787 (N.D. Cal. 2019), Resp. at 24, is distinguishable, as the *Kurowski* court recognized: "unlike in *In re Facebook*, there

[14] Plaintiffs claim that Nourish's Privacy Policy is contradicted by its separate HIPAA Privacy Notice. Resp. at 11–12. But as explained above, the alleged disclosures here do not constitute IIHI and therefore do not fall under Nourish's separate HIPAA policy. *See supra* Section II.A.1.

is no allegation here that Facebook, Google, or Bidtellect took the private facts . . . allegedly disclosed to them, turned around, and communicated the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge." *Kurowski*, 683 F. Supp. 3d at 849–50 (cleaned up). Nor does Ex. 23, *Brahm v. Hospital Sisters Health System*, No. 23-CV-444, 2024 WL 3226135 (W.D. Wis. June 28, 2024), help Plaintiffs because the court applied a Wisconsin statute and did not analyze the public at large requirement. *See* Resp. at 24.

Moreover, Plaintiffs have not sufficiently alleged that any disclosure was highly offensive. The information disclosed must be "facially revealing, compromising or embarrassing." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1018 (Ill. App. Ct. 2004). Plaintiffs' cited cases concern *medical diagnoses*, not the mere disclosure of an appointment scheduled with a dietitian.[15] Plaintiffs' allegations thus do not concern "medical diagnoses and health insurance information," *Roper*, 2023 WL 7410641, at *4, or present the kind of required sensitive health information.[16]

**C. Plaintiffs' breach of implied contract claim (Count V) should be dismissed.**

No implied contract exists. Plaintiffs' cited cases hinge on agreements "implied from the parties' relationship." Ex. 26, *Doe v. Fertility Ctrs. of Ill., S.C.*, No. 21 C 579, 2022 WL 972295, at *4 (N.D. Ill. Mar. 31, 2022); Resp. at 25. There is nothing to imply here. *See* Mot. at 23–24.[17]

---

[15] Resp. at 24 (citing *Smith*, 2024 WL 3338941, at *4 (plaintiffs' claim was based on "specific medical diagnoses and treatment they inputted on [defendant's] website"); Ex. 24, *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 CV 1836, 2023 WL 7410641, at *4 (N.D. Ill. Nov. 9, 2023) ("Plaintiffs allege that Defendant caused their sensitive health information, including medical diagnoses, to be improperly accessed and publicized to an unknown number of hackers, who can then sell that information."); Ex. 25, *Thakkar v. Ocwen Loan Servicing, LLC*, No. 15 CV 10109, 2019 WL 2161544, at *13 (N.D. Ill. May 17, 2019) (plaintiff "alleged that his prescription medication was taken from the house, and that his medical records were accessed as well"); *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 652 (N.D. Ill. 2005) (plaintiff had not adequately pled private facts in case that did not concern medical information)).

[16] Plaintiffs do not contend that their claim is based on intrusion upon seclusion, and have therefore waived any argument that this is the basis for their claim. *See* Resp. at 23–24; Mot. at 22–23.

[17] Plaintiffs curiously argue that, despite not bringing an express contract claim, they may bring a claim for breach of implied contract in the alternative to a claim for breach of express contract. Resp. at 25 n.13. But where there is an express contract (and there is, because Plaintiffs agreed to the Privacy Policy, and now only argue about its effect), there can be no implied contract.

The Privacy Policy, which "concern[s] the same subject matter" as Plaintiffs' implied breach of contract claim, means Plaintiffs "cannot assert a claim on a contract implied in law." *Archon Constr. Co. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017). At a minimum, there was no meeting of the minds for an *implied* agreement contrary to the Privacy Policy. *See* Ex. 27, *Arwa & Change Advocs. LLP v. Smith LaCien LLP*, No. 24 CV 6620, 2025 WL 1807939, at *5 (N.D. Ill. July 1, 2025) (implied contract requires "mutual intent to contract").

Plaintiffs also have not alleged any economic *injury*. Plaintiffs' attempt to distinguish Ex. 28, *Wittmeyer v. Heartland Alliance for Human Needs & Rights*, No. 23 CV 1108, 2024 WL 182211, at *5 (N.D. Ill. Jan. 17, 2024), as based on the incidental disclosure of personal information, misses the point. "[A] plaintiff must allege actual monetary damages, that is an actual loss or measurable damages resulting from the breach." *Id.* (cleaned up). Nothing in *Wittmeyer*, which applies Illinois law,[18] turns on how the *defendant* obtained the information. Instead, the focus is on the plaintiff's injury, and "Illinois has declined to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages." *Id.* at *6 (cleaned up). Plaintiffs never allege that they suffered the necessary actual monetary damages.

### D. Plaintiffs' breach of fiduciary duty claim (Count III) should be dismissed.

Plaintiffs argue that a fiduciary duty exists because there was a "physician-patient relationship." Resp. at 27–28. Nourish, an online provider of remote appointments with dietitians, is *not* a physician. Plaintiffs cite two cases, both about the fiduciary duty a *treating physician* owes their patient. Resp. at 27–28 (citing *Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000); *Doe*, 2022

[18] Plaintiffs' other cited cases, Resp. at 27 n.14—which do not apply Illinois law—rely on the "diminution in the value of [plaintiffs'] personal information" to establish damages, which as *Wittmeyer* explains, is not available in Illinois. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1297 (S.D. Cal. 2020); Ex. 29, *Bray v. Gamestop Corp.*, No. 17-CV-1365, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) (alleging "a loss in value of their personal information"); *Brahm*, 2024 WL 3226135, at *4 (allegations based on "diminished . . . sales value" of information).

WL 972295, at *5–6). But that duty does not apply to "administrative and information technology staff in charge of maintaining [] information." Ex. 30, *In re Lurie Children's Hosp. Data Sec. Litig.*, No. 24-CV-05503, 2025 WL 2754760, at *11 (N.D. Ill. Sept. 27, 2025).

Plaintiffs have not identified "any court in Illinois [that] has found that a healthcare facility has a fiduciary duty in relation to patients' private information." *Genesis Health*, 2024 WL 3890164, at *13. Nourish is not a "physician" that "takes some affirmative action to participate in the care, evaluation, diagnosis or treatment of a specific patient." *Mackey v. Sarroca*, 35 N.E.3d 631, 638 (Ill. App. Ct. 2015). "[N]either the exchange of confidential information nor the existence of a formal business relationship gives rise to fiduciary obligations." Ex. 31, *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-CV-7619, 2016 WL 7409916, at *5 (N.D. Ill. Dec. 22, 2016). This Court should not "break new ground" by expanding the physician-patient fiduciary duty. *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017) (cleaned up).

**E. Plaintiffs' negligence claim (Count IV) should be dismissed.**

For starters, Plaintiffs failed to respond to Nourish's argument that Plaintiffs do not allege any appreciable, nonspeculative, present harm purportedly caused by Nourish's alleged breach. Mot. at 28; Resp. at 28–29. This alone warrants dismissal. *See Jones*, 2012 WL 4361500, at *7.

Plaintiffs also argue that they sufficiently alleged the existence of a duty for Nourish to safeguard their personal information. Resp. at 28–29. Plaintiffs' argument rests on a 2017 amendment to Illinois's Personal Information Protection Act ("PIPA"). But Plaintiffs ignore that "[t]he Illinois Supreme Court has not recognized a duty to safeguard personal information, and the PIPA does not expressly repeal *Cooney*'s holding" that there is no common law duty to safeguard information. *Genesis Health*, 2025 WL 1000192, at *4 (citing *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23 (Ill. App. Ct. 2010)). "[A] statute alone cannot create a common law duty." Ex. 32, *Doe 1 v. Chestnut Health Sys., Inc.*, No. 24-CV-01475, 2025 WL 1616635, at *2 (C.D. Ill. June 6,

2025). Given the "conflicting forces" between *Cooney* and subsequent Illinois appellate decisions, "the Court [is] bound to follow controlling decisions by the Seventh Circuit and the Illinois Supreme Court, which have yet to recognize a common law duty to safeguard personal information." *Genesis Health*, 2025 WL 1000192, at *4 (citing *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (post-dating PIPA: "Illinois has not recognized an independent common law duty to safeguard personal information")); *Chestnut Health*, 2025 WL 1616635, at *2 (same). While Plaintiffs cite decisions holding that PIPA creates a duty, Resp. at 29, those decisions lack the careful analysis employed in *Genesis Health* and *Chestnut Health*.

Finally, Plaintiffs contend that the economic loss doctrine does not bar Plaintiffs' negligence claim because the duty at issue did not arise from the parties' contract. Resp. at 29. But as explained above, *supra* Sections II.A.3, II.C, Nourish's Privacy Policy created an express contract that covered the exact conduct at issue. Any obligation Nourish had to safeguard Plaintiffs' data was dictated by the Privacy Policy, barring Plaintiffs' negligence claim.[19]

**F. Plaintiffs' unjust enrichment claim (Count VI) should be dismissed.**

Because Plaintiffs' unjust enrichment claim "rests on the same improper conduct alleged in another claim"—here, the implied contract claim—"[Plaintiffs] cannot advance an unjust enrichment claim as a standalone action." Ex. 33, *Juenger v. Deaconess Health Sys., Inc.*, No. 24-CV-2332, 2025 WL 2780221, at *6 (S.D. Ill. Sept. 30, 2025).[20]

## CONCLUSION

Nourish respectfully requests that the Court grant its Motion and dismiss the Complaint.

---

[19] Plaintiffs argue Nourish violated the "extracontractual duty" to maintain reasonable security measures, but cite cases that did not apply the economic loss doctrine or where no express contract was alleged. Resp. at 29 (citing *Stein*, 2025 WL 580556, at *8–9; *Smith*, 2024 WL 3338941, *7 n.5).

[20] Plaintiffs concede that their breach of confidence claim (Count II) should be dismissed. Resp. at 30 n.15. The Court therefore should dismiss the claim. *See* Ex. 34, *Jones v. UrbanStrong, LLC*, No. 23-CV-03445, 2024 WL 774907, at *1 (N.D. Ill. Feb. 26, 2024).

Dated: March 4, 2026

Respectfully submitted,

*/s/ David A. Gordon*
David A. Gordon
D. Samuel Gorsche
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7159
dgordon@sidley.com
sgorsche@sidley.com

*Counsel for Defendant Nourish, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 4, 2026, the foregoing document was filed electronically using the ECF system, which will send notification of such filing to all counsel of record at their email addresses on file with the Court.

*/s/ David A. Gordon*
David A. Gordon