IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Arissa Podraza et al.,

                 Plaintiffs,

       v.

Nourish, Inc.,

                 Defendant.

Case No.: 25-cv-50356

Judge Iain D. Johnston

**MEMORANDUM OPINION and ORDER**

Arissa Podraza, Susan Colby, and Jessica Keller (collectively, "Plaintiffs") filed a complaint against Nourish, Inc. ("Nourish") on behalf of themselves and a putative class of similarly situated persons. Plaintiffs allege that Nourish surreptitiously placed tracking technology on its website to record sensitive health information and transmit it to Alphabet, Inc. ("Google").

Harmed by this breach of privacy, Plaintiffs brought this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Plaintiffs' complaint has eight claims: (1) Invasion of Privacy; (2) Breach of Confidence; (3) Breach of Fiduciary Duty; (4) Negligence; (5) Breach of Implied Contract; (6) Unjust Enrichment; (7) violation of the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511(1) et seq.; and (8) violation of the California Invasion of Privacy Act, Cal. Pen. Code. § 630 et seq. Nourish moved to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court

1

denies the motion to dismiss for lack of personal jurisdiction. It grants in part and denies in part the motion to dismiss for failure to state a claim.

## I.    Background[1]

At times, Plaintiffs' complaint reads less like a complaint and more like a press release. Rule 8 requires pleadings to be short and plain. Fed. R. Civ. P. 8(a)(1). And just as there ain't no vista and there ain't no view at the Vista View Apartments, the complaint isn't short and it isn't plain. The Court doesn't appreciate the inclusion of information beyond the short and plain statement of the claims required by Rule 8. This Court isn't alone in its dislike of prolix complaints like this one. *See Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *2 (N.D. Ill. Feb. 21, 2025). Press release complaints are counterproductive and violative of Rule 1. Concision is a strength.

Nourish, a Delaware corporation, is based in Texas (according to Plaintiffs) or New York (according to Nourish). It operates a website that allows prospective patients to schedule telehealth appointments with registered dieticians. It currently employs over 6,000 dietitians who are available in all 50 states.[2] Plaintiffs used Nourish's website to schedule appointments with registered dieticians while signed in to their Google accounts.

---

[1] Except where noted, the Court draws these allegations from the complaint and accepts them as true for the purpose of resolving the motion to dismiss. *Landmark Am. Ins. Co. v. Deerfield Constr. Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

[2] Nourish, https://www.usenourish.com/become-a-dietitian (last visited Apr. 20, 2026). This information is drawn from Nourish's website. It's appropriate to consider the content of the website in deciding this motion to dismiss because the website is central to the complaint, which references it. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Plaintiffs allege that Nourish wrongfully placed Google tracking technology on its website. Specifically, Nourish configured tracking pixels, a cookie-like tracking technology, to record and transmit to Google the information users entered on its appointment scheduling form. This included the fact that an appointment was scheduled, the date of the appointment, the name of the treating dietician, and the state in which the treating dietician was licensed.[3] The pixels also transmitted information identifying the user's Google account. When Plaintiffs scheduled their appointments, they didn't know that the information they entered would be transmitted to Google or that this tracking happened. In fact, they expected Nourish to keep their information private. Plaintiffs allege that Nourish transmitted this information for financial gain. After scheduling their appointments, Plaintiffs saw targeted marketing related to nutrition.

---

[3] Plaintiffs refer to these facts as "sensitive health information." Nourish disputes that characterization.

## II.     Personal Jurisdiction[4]

Nourish first challenges the Court's jurisdiction over it under Rule 12(b)(2). The Court agrees with both parties—the Court has no general jurisdiction over Nourish in Illinois. So, it must consider whether it has specific personal jurisdiction. The plaintiff bears the burden of making only a *prima facie* case that jurisdiction is appropriate when the decision is made without the benefit of an evidentiary hearing. *North v. Ubiquity, Inc.*, 72 F.4th 221, 224-25 (7th Cir. 2023). The Court must "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010).

Illinois law determines the boundary of this Court's ability to exercise personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). In Illinois,

---

[4] Although not raised by Nourish, the Court has an independent duty to ensure it has subject matter jurisdiction. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Standing is an essential component of Article III's case or controversy requirement. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Standing requires a plaintiff to "have suffered an injury-in-fact traceable to the defendant and capable of being redressed through a favorable judicial ruling." *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 876 (7th Cir. 2020). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Potentially at issue in this action is the injury in fact requirement.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citation modified). It is concrete if it is "real," not abstract. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). "A bare procedural violation" doesn't qualify as an injury without concrete harm. *Id.* at 341. The asserted harm must bear a close relationship "to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Disclosure of private information is one such harm. *Id.* at 425.

In this case, Plaintiffs allege that they were harmed as the recipients of unwanted targeted advertisements and by the disclosure of information concerning their appointments with dietitians— that they scheduled it, who it's with, and where it is. The harm posed by irritating advertisements is analogous to that posed by intrusion upon seclusion, a long-recognized tort. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020). Publishing another's private information is another long-recognized tort and a genuine harm. Restatement (Second) of Torts § 652D (1977). Taken together, there is no doubt that Plaintiffs adequately allege the existence of an actual and concrete injury.

4

personal jurisdiction is limited only by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 735 ILCS 5/2–209(c).

A court can only exercise specific jurisdiction over a defendant if three requirements are met:

> First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (alterations in original) (quoting *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)). Each requirement is met in this action.

Purposeful availment requires the defendant to have "certain minimum contacts" with the forum state. *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). It's the defendant's contacts with the forum that matter, not the plaintiff's. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Those contacts "must be with the forum state, not just with individuals within the state." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 621 (7th Cir. 2022). The contacts "must demonstrate that the defendant purposively availed itself of the laws of that jurisdiction by availing itself of the privilege of doing business in the state or by purposively directing activities at the state." *Id.* This inquiry "protects the defendant from the burden of litigating in a distant, inconvenient forum" and "prevent states from reaching beyond the limits of their sovereignty." *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024).

5

Simply operating an interactive website accessible from Illinois will not subject the website's operator to suit in Illinois. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). But Nourish does much more. Nourish's website offers patients the ability to connect with dieticians registered in all fifty states. It's "find a dietitian near me" page allows users to search for providers by state, including Illinois. It even has a page for Chicago.[5] From this, it's reasonable to infer that Nourish employs dietitians who are registered in Illinois and employed by Nourish in Illinois. It's reasonable to infer that Nourish targeted Illinois so that the state's residents would use its services. This all supports the inference that Nourish purposefully availed itself of the privilege of doing business in Illinois.

In an analogous case, *Illinois v. Hemi Group LLC*, the defendant's website allowed customers to calculate shipping fees using zip codes. 622 F.3d 754, 757-58 (7th Cir. 2010). The court found this sufficient for jurisdictional purposes because the defendant "stood ready and willing to do business with Illinois residents" and in fact did business with Illinois residents. *Id.*[6] In this case, Nourish did the same by constructing its website to induce Illinois residents to make appointments with

---

[5] *Best Dietitian Near Me in Chicago, Illinois*, Nourish, https://www.usenourish.com/local-dietitians/chicago-illinois (last visited Apr. 20, 2026). Apparently, Screw City and the other great municipalities of Illinois don't deserve access to nearby dieticians.

[6] The *Hemi* Court also noted that Hemi's statement that it would not ship to New York was important because Hemi had expressly chosen to do business with the forty-nine other states and the exclusion of New York showed that Hemi "knew that conducting business with residents of a particular state could subject it to jurisdiction there and also that it knew how to protect itself from being haled into court in any particular state." *Hemi Grp. LLC*, 622 F.3d at 758. Although Nourish targets all fifty states, this distinction is of little consequence because Nourish's explicit and substantial targeting of Illinois demonstrates "that it should have foreseen being subject to litigation in Illinois as a result of its . . . sales to Illinois customers." *Id.*

Illinois dietitians. Because Nourish targeted Illinois and could reasonably foresee that its services would be purchased and used in Illinois, jurisdiction is proper here. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020). Jurisdiction over Nourish is proper not because Nourish operated a website accessible from Illinois, but because it intentionally used that website to do business in Illinois.

Jurisdiction doesn't require a strict causal relationship between the relevant minimum contacts and the action. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361-62 (2021). Instead, a plaintiff's injuries must only arise out of or relate to the defendant's contacts with the forum. *Id.*; *Walden*, 571 U.S. at 284.

Nourish's contacts are intimately related to this litigation. As discussed above, Nourish's website and the messaging therein are a key component of the company's contacts with Illinois. Plaintiffs' claims arise out of their use of that website. There's little daylight between Nourish's contacts with Illinois and this action.

Subjecting Nourish to suit in Illinois "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. Courts consider several factors including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987); *Purdue Research Found. v. Sanofi-Synthelabo S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). Courts should also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co.*, 480 U.S. at 113 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Although Nourish addresses all five factors in its motion to dismiss, Plaintiffs only address two: (1) the burden on the defendant, and (2) the forum state's interest in adjudicating the dispute. Still, it's Nourish's burden to show that jurisdiction would be improper. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Considering the relevant factors, it's fair and just to exercise jurisdiction over Nourish in Illinois. Although Nourish is based outside of Illinois, it "structured its marketing so that it can easily serve the state's consumers . . . ." *Curry*, 949 F.3d at 402. Nourish "held itself as conducting business nationwide" through its interactive website. *Id.* The burden of requiring Nourish to defend a lawsuit in Illinois is minimal because of Nourish's extensive contact with Illinois. *Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*, No. 04 C 6900, 2005 U.S. Dist. LEXIS 6244, at *10 (N.D. Ill. Feb. 23, 2005) ("Although it no doubt burdens a non-Illinois resident to litigate in this state, each of the defendants reasonably could anticipate being sued in Illinois.").

Illinois has a strong interest in protecting its citizens' privacy and in regulating healthcare. *Barsky v. Bd. of Regents of Univ.*, 347 U.S. 442, 449 (1954) ("It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there. It is a vital part of a state's police power."); *see Thakkar v. ProctorU Inc.*, 571 F. Supp. 3d 927, 941

8

(C.D. Ill. 2021) (recognizing Illinois' interest in protecting its citizens' online privacy). This case concerns both. The other factors are neutral or only slightly against jurisdiction. Ultimately, there's minimal unfairness in subjecting an entity to jurisdiction in a state where they intended to do business. The motion to dismiss for lack of personal jurisdiction is denied.

### III.    Nourish's Rule 12(b)(6) Motion to Dismiss

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1956)). It must also include factual allegations sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This happens when the plaintiff's factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

The Court accepts factual allegations as true and draws reasonable inferences in the light most favorable to the plaintiff. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

9

### a. Count VII – Electronic Communications Privacy Act

Nourish seeks dismissal of Count VII for three reasons: (1) the statute's crime-tort exception doesn't apply; (2) Plaintiffs consented to the conduct; and (3) there's a lack of interception and even if there were, Nourish didn't intend to intercept.

Plaintiffs allege Nourish violated the Electronic Communications Privacy Act, a statute also known as the Wiretap Act. This law creates a private right of action against "any person who—(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

Interception is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The Wiretap Act is a one-party consent statute—it doesn't prevent a party from "intercepting" their own communications. 18 U.S.C. § 2511(2)(d). But there's an exception to that exception. It's unlawful for a party to intercept their own communications if that "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* This is known as the "crime-tort" exception, and it requires an independent crime or tort separate from any violation of the Wiretap Act.

10

### 1. Crime-Tort Exception Applies

Plaintiffs allege that Nourish was not a party to the communication in their complaint, but they abandon this argument in their response. Compl. at ¶ 193; resp. at 12. The Court will consider it waived for the purposes of this motion. Therefore, Nourish can only be liable if the crime-tort exception applies.

Plaintiffs argue that it does because Nourish violated the Health Insurance Portability and Accountability Act ("HIPAA"). HIPAA prohibits "knowingly . . . disclos[ing] individually identifiable health information to another person." 42 U.S.C. § 1320d-6. Individually identifiable health information means any information, including demographic data, that:

> (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and – (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individuals. 42 U.S.C. § 1320(d)(6).

Courts have repeatedly recognized that HIPAA violations can trigger the crime-tort exception. *See Stein*, 2025 U.S. Dist. LEXIS 31273, at *11-12 (collecting cases).

Plaintiffs have plausibly alleged that Nourish violated HIPAA. Nourish holds itself out as a healthcare provider and Plaintiffs have alleged that it received information about their appointments with dietitians. Deciding to visit a dietitian plausibly relates to the physical health of that individual. There's reason to believe that the information Nourish received (name of dietitian, date and location of

appointment, and Google account information) could be used to identify the Plaintiffs because they allegedly faced targeted advertisements after using Nourish's website. *See Kurowski III*, 2023 U.S. Dist. LEXIS 219895, at *7-9 (conducting a similar analysis). Lastly, it's plausible that Nourish knowingly violated HIPAA by intentionally configuring trackers on its website to collect the information and share it with Google.

But Nourish has another textual argument why the crime-tort exception doesn't apply. Nourish contends that Plaintiffs must allege that Nourish intended to commit a crime or tort because the statute refers to "the *purpose* of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). Nourish purportedly lacked this purpose because it disclosed the information for financial gain. Some courts have accepted this argument. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (holding that defendant's primary motivation must have been to injure plaintiffs tortiously). This Court doesn't. And neither do other judges in the Northern District of Illinois. *See Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 U.S. Dist. LEXIS 60486, at *10-11 (N.D. Ill. Mar. 31, 2025). Instead, the Court is persuaded by the reasoning of another court in this district: "[t]he placement of 'criminal or tortious' . . . modifies 'act,' not 'purpose.' The statute does not require a 'criminal or tortious purpose.' It requires a purpose of committing an act — an act that is criminal or tortious." *Stein*, 2025 U.S. Dist. LEXIS 31273, at *14-15. "If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception . . . applies. A desire to commit a crime

*qua* crime, or a tort *qua* tort, isn't necessary." *Id.* at \*14. Other courts have reached similar conclusions. *See Hannant v. Culbertson Mem'l Hosp. Found.*, No. 4:24-cv-04164-SLD-RLH, 2026 U.S. Dist. LEXIS 57449, at \*18-20 (C.D. Ill. Mar. 19, 2026) (collecting cases). Plaintiffs have adequately pled that Nourish intercepted their communications for the purpose of disclosing it to Google and that this disclosure violated HIPAA. This satisfies the crime-tort exception.

### 2. Plaintiffs Didn't Consent

Next, Nourish argues that Plaintiffs consented to the disclosure of their information to Google by accepting the terms of Nourish's privacy policy and the website's terms of use.[7] Nourish argues that their privacy policy creates an express contract between it and Plaintiffs. The Complaint doesn't mention the privacy policy at all. However, it's located on Nourish's website which is referenced throughout the complaint, Plaintiffs concede its authenticity, and its central to the claims, so it's appropriate to consider it on the motion to dismiss. *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022).

In Illinois, websites must "provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016). This can be accomplished in multiple ways. *Id.* But Nourish didn't require users of its website to affirmatively accept the policy. It provided a link to its privacy policy at the bottom of every page of its

---

[7] *Privacy Policy*, Nourish, https://www.usenourish.com/privacy (last updated Jan. 2022); *Terms of Use*, Nourish, https://www.usenourish.com/terms/jan-2022-terms (pub. Jan. 2022).

website. The privacy policy is also referenced in the website's terms of use that is also linked at the bottom of the website. This makes the privacy policy a "browsewrap agreement" and it's likely unenforceable. *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024) (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023)). According to the *Oberstein* Court browsewrap agreements are those "in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." 60 F.4th at 513 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

Even if the Court were to treat the privacy policy as something more than a browsewrap agreement, it's doubtful that an express contract exists. When an online agreement relies on passive assent, a contract exists "only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Domer*, 116 F.4th at 695 (citation omitted).

In this case, no allegations exist that the Plaintiffs were aware of the privacy policy or took any affirmative action to manifest assent. In addition, the Court cannot conclude at the motion to dismiss stage that a link to a purported agreement at the bottom of a webpage provides users with reasonable notice of the agreement's terms. Accordingly, for purposes of this motion, the privacy policy is not part of any

14

express contract. The same is true of Nourish's HIPAA notice which doesn't appear to be readily accessible from Nourish's website at all.

What's more, even if the privacy policy were part of an enforceable contract, it's not at all clear that the policy covers the information at issue in this action. The privacy policy tells an inquiring user:

> We automatically collect certain information about your device, including information about your web browser, IP address, time zone, and some of the cookies that are installed on your device. Additionally, as you browse the Site, we collect information about the individual web pages or products that you view, what websites or search terms referred you to the Site, and information about how you interact with the Site.

The privacy policy also states that Nourish shares users' personal information with Google and that it is used to make targeted advertisements.

Vague or indefinite contractual terms are unenforceable under Illinois law. *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 767 (N.D. Ill. 2019). A term is vague or indefinite if the court cannot determine what the parties have agreed to. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992). Does "information about how you interact with the Site" include the actual information entered on a scheduling form on the site or is the term too vague to be enforced? At the motion to dismiss stage, making all reasonable inferences in favor of Plaintiffs, the Court cannot conclude that the privacy policy covers the disclosed information. For these reasons, it's at least plausible that no express contract exists and Plaintiffs didn't consent to any disclosure of their information to a third-party.

15

### 3. The Complaint Adequately Alleges Interception and Intention to Intercept

Continuing to push hay bales off the wagon, Nourish next contends that the complaint fails to allege an interception because (1) Plaintiffs voluntarily entered their information on Nourish's website and (2) the disclosure of information to Google was not simultaneous to the interception. This first argument fails because, as explained above, the crime-tort exception applies, and Plaintiffs have adequately alleged that they didn't consent to the disclosure to Google.

As to the second argument, the Seventh Circuit has declined to decide whether the Wiretap Act is only violated by "interception that occurs *during transmission* rather than *after* the electronic message has 'come to rest on a computer system.'" *Epstein v. Epstein*, 843 F.3d 1147, 1149 (7th Cir. 2016) (quoting *United States v. Szymuszkiewicz*, 622 F.3d 701, 703 (7th Cir. 2010)). Other circuits that have considered the issue have concluded that "the acquisition of a communication must be contemporaneous with its transmission." *Luis v. Zang*, 833 F.3d 619, 628 (6th Cir. 2016) (collecting cases).

Like the Seventh Circuit in *Epstein*, this Court doesn't need to reach the issue because Plaintiffs have adequately alleged contemporaneous interception. In *Szymuszkiewicz*, the Seventh Circuit upheld the criminal conviction of a defendant under the Wiretap Act when the defendant created a rule in Outlook duplicating his supervisor's email. 622 F.3d at 704. According to the Seventh Circuit, the interception happened when incoming emails were copied by the server before they

16

made it to the victim's inbox. *Id.* Making all reasonable inferences in Plaintiffs' favor, it's plausible that the tracking pixels Nourish installed on its website immediately duplicated the information Plaintiffs intended to send solely to Nourish before Nourish ultimately received it. *Cf. Epstein*, 843 F.3d at 1150 (declining to dismiss a Wiretap Act claim at pleading stage when it was not possible to determine exact timing of interception). This is sufficient to state a claim at the pleadings stage.

Lastly, Nourish argues that it can't be liable because it didn't intend to engage in any interception. This argument falls short because Plaintiffs pled that Nourish specifically configured the tracking tools to record their information. This supports the reasonable inference that Nourish intended to intercept the information.

Plaintiffs have adequately stated a claim for a violation of the Wiretap Act. The crime-tort exception applies, and Plaintiffs have adequately pled the other elements of a violation. The motion to dismiss Count VII is denied.

### b. Count VIII – California Internet Privacy Act

Plaintiffs also bring a claim under the California Internet Privacy Act. The analysis of a California Internet Privacy Act claim and a Wiretap Act claim are the same. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Nourish doesn't advance any arguments to support dismissal of the claim separate from the ones brought to dismiss the Wiretap Act claim. Because the Plaintiffs have plausibly alleged a violation of the Wiretap Act, they have plausibly alleged a

17

violation of the California Internet Privacy Act. The motion to dismiss Count VIII is denied.

### c. Common Law Claims

#### 1. Count I - Invasion of Privacy

An invasion of privacy claim requires a plaintiff to plead that "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Johnson v. K mart Corp.*, 723 N.E.2d 1192, 1197 (Ill. 2000). Nourish argues that the fact that Plaintiffs scheduled an appointment with a dietician was neither publicized nor highly offensive. Only the issue of publication need be addressed.

Plaintiffs allege that Nourish disclosed this information to Google. They seem to also allege that Google then shared this information with advertisers. It's not plausible that this digital version of the game of telephone caused the publication of Plaintiffs' information.

Information is publicized when it either reaches the public at large or is sure to reach the public. *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023). Publicity doesn't turn on the number of people who received the information. *Id.* The information must become truly public information. Restatement (Second) of Torts, § 652D. Plaintiffs have not alleged that Nourish disclosed their information to the public at large. Despite its ubiquitous presence on the internet, Google isn't the public. The public doesn't know something just because Google does. Including

18

disclosure to advertisers in the equation doesn't change the answer. Plaintiffs haven't alleged sufficient publicity. The motion to dismiss Count I is granted.

### 2. Count II – Breach of Confidence

Plaintiffs don't contest Nourish's motion to dismiss Count II. The claim is terminated.

### 3. Count III – Breach of Fiduciary Duty

A claim for breach of fiduciary duty requires the plaintiff to adequately allege the existence of that duty. *Alonso v. Weiss*, 932 F.3d 995, 1001 (7th Cir. 2019). Plaintiffs allege that a fiduciary relationship existed between them and Nourish because Nourish is a medical provider. Stated differently, they attempt to allege the existence of the patient-physician relationship.

Courts have repeatedly held that the physician patient relationship is limited to those providing actual medical care. *See In re Lurie Children's Hosp. Data Sec. Litig.*, No. 24-CV-05503, 2025 U.S. Dist. LEXIS 190839, at *37 (N.D. Ill. Sept. 27, 2025) ("[T]he Court cannot conclude that the same fiduciary duty owed by the physicians who treated Plaintiffs also applied to Lurie and its administrative and information technology staff in charge of maintaining patient information in Lurie's systems."); *Nutty v. Jewish Hosp.*, 571 F. Supp. 1050, 1052 (S.D. Ill. 1983) ("While physicians clearly have a fiduciary relationship with their patients, the relationship between a hospital and a patient is more difficult to categorize."); *Doe v. Genesis Health Sys.*, No. 23-cv-4209-JES-JEH, 2024 U.S. Dist. LEXIS 149581, at *38 (C.D. Ill. Aug. 21, 2024) ("Plaintiff fails to support that any court in Illinois has found that

19

a healthcare facility has a fiduciary duty in relation to patients' private information."). If Illinois law doesn't extend the fiduciary duty to healthcare facilities, it certainly doesn't extend it to a website that, based on the facts alleged, merely facilitates appointments.

Under Illinois law, "[a] physician-patient relationship is established where the physician takes some affirmative action to participate in the care, evaluation, diagnosis or treatment of a specific patient. The central inquiry is whether the physician has been asked to provide a specific service for the benefit of a specific patient." *Mackey v. Sarroca*, 35 N.E.3d 631, 638 (Ill. App. Ct. 2015) (internal citation omitted). In one case, cited by Plaintiffs, a court declined to dismiss a claim against a fertility center in which the plaintiff alleged the breach of a fiduciary duty after an initial consultation at the center. *Doe v. Fertility Ctrs. of Ill.*, No. 21 C 579, 2022 U.S. Dist. LEXIS 59145, at *16-17 (N.D. Ill. Mar. 31, 2022). That case is distinguishable because that case involved an initial consultation at a specific medical facility. In this case, Plaintiffs have alleged that Nourish allowed them to scheduled appointments. They have not alleged that Nourish provided any medical care or that they even attended an appointment with a Nourish dietitian. Creating a fiduciary duty for a website in such circumstances would push the duty past all reasonable limits. Count III is dismissed.

### 4. Count IV – Negligence

A negligence claim requires a plaintiff to plead "that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the

breach was the proximate cause of the plaintiff's injuries." *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015). Continuing its multi-pronged attack on the complaint, Nourish's motion argues that the negligence claim must be dismissed for three reasons. According to Nourish, no duty exists as a matter of law under these facts. *See Quinton v. Kuffer*, 582 N.E.2d 296, 300 (Ill. App. Ct. 1991) (the existence of a duty is a question of law based on the facts presented). Next, Nourish asserts that the *Moorman* Doctrine bars the negligence claim. Finally, Nourish argues that Plaintiffs have failed to adequately plead harm. None of these arguments prevail.

### a. A Duty Existed Under the Complaint's Allegations

Plaintiffs allege that Nourish had a duty to keep the health information it received secure; this duty was breached when the information was shared; and that this caused them to suffer damages.

Nourish ask this Court to hold that there's no duty to safeguard personal information in Illinois. Before 2017, this argument was undoubtedly correct. *See Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010) (holding that there is no duty to safeguard information). In 2017, Illinois amended the Illinois Personal Information Protection Act to require data collectors to "implement and maintain reasonable security measures to protect" data from "unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 ILCS 530/45(a). Illinois Appellate Courts have now recognized that a duty to safeguard information exists under both statute and common law. *Flores v. AON Corp.*, 242 N.E.3d 340, 354 (Ill. App. Ct. 2023). However, the Illinois Supreme Court hasn't recognized the

21

existence of this duty. And, in 2018, after the 2017 amendment, the Seventh Circuit cited to *Cooney* to note, "Illinois has not recognized an independent common law duty to safeguard personal information." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018).

Some district courts have concluded that *Cooney* and *Schnuck* remain good law. *See e.g. Genesis Health Sys.*, 2025 U.S. Dist. LEXIS 65328, at *14-15; *Doe v. Chestnut Health Sys.*, No. 1:24-cv-01475-JEH-RLH, 2025 U.S. Dist. LEXIS 107627, at *7-8 (C.D. Ill. June 6, 2025). Most courts have relied on *Flores* to conclude that the duty to safeguard data now exists. *See e.g. In re Lurie Child.'s Hosp. Data Sec. Litig.*, 2025 U.S. Dist. LEXIS 190839, at *31 (collecting cases).

In deciding whether the duty exists, the Court is required to rely on "decisions of intermediate appellate courts unless there is good reason to doubt the state's highest court would agree with them." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017) (citing *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011)). There's no reason to think that the Illinois Supreme Court would disagree with *Flores* in light of the 2017 amendment to the Illinois Personal Information Protection Act. What's more, the holding in *Schnuck* is not controlling because "[a]lthough *Schnuck* was decided after the PIPA was amended, 'the data breach at issue . . . occurred in 2012, so the 2017 amendments to PIPA were not relevant to the Seventh Circuit's analysis.'" *In re Lurie Child.'s Hosp. Data Sec. Litig.*, 2025 U.S. Dist. LEXIS 190839, at *31 (alteration in original) (quoting *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097, 2021 U.S. Dist. LEXIS

22

179775, at *7 (C.D. Ill. Sept. 21, 2021)). Accordingly, the Court concludes that data collectors owe a common law duty to take reasonable security measures to protect the data they collect.

However, this isn't a data breach case. The allegations don't concern Nourish's security measures. Instead, this is a case about Nourish's allegedly intentional and unauthorized decision to disclose Plaintiffs' information. So, the question is whether Illinois would extend the duty to have reasonable security measures to cover any unauthorized disclosure of information to third parties.[8] The Court needs to predict how the Illinois Supreme Court *would* address the issue considering intermediate appellate court decisions. *Schnuck*, 887 F.3d at 811. The Court is mindful that federal courts shouldn't break new ground in state law. *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017). As Justice Eugene Doherty has reminded the undersigned, the federal district court should be mindful that the analysis is to determine how the Illinois Supreme Court *would* decide the issue, not how the federal district court thinks the Illinois Supreme Court *should* decide the issue.

In *Flores*, the court determined that a common law duty to safeguard data existed considering "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4)

---

[8] The 2017 amendment which requires data collectors to protect information from "unauthorized access, acquisition, destruction, use, modification, or disclosure," 815 ILCS 530/45(a), doesn't impose this duty because a statute cannot create a common law duty alone. *See Flores*, 242 N.E.3d at 354 (analyzing the existence of a common law duty separate from a statutory duty); *Doe v. Chestnut Health Sys.*, No. 1:24-cv-01475-JEH-RLH, 2025 U.S. Dist. LEXIS 107627, at *7 (C.D. Ill. June 6, 2025).

the consequences of placing that burden on the defendant." 242 N.E.3d at 354. In this case, the injury is both highly foreseeable and likely given the allegations concern intentional disclosure to a third party. The magnitude of the burden is minimal because it would simply require Nourish to desist from providing this information. The consequences of placing this burden on Nourish is also minimal because, according to its HIPAA notice, it already takes measures to safeguard its patients' information.[9]

Given this analysis, it's likely that Illinois would impose a common law duty on Nourish to avoid the unauthorized disclosure of information. This is a natural extension of the duty to maintain reasonable security measures. Other courts in this district have reached a similar conclusion. *See e.g. Stein*, 2025 U.S. Dist. LEXIS 31273, at \*23 ("It's not 'you buy it, you break it,' but it's in the same neighborhood. You collect it, you keep it safe.").

The complaint alleges that Nourish collected Plaintiffs' personal information and disseminated it without consent. So, the complaint plausibly alleges the existence of a duty and its breach.

### b. The *Moorman* Doctrine is Inapplicable

Nourish contends that the economic loss doctrine requires dismissal of Plaintiffs' claims. The economic loss doctrine, also known as the *Moorman* doctrine, bars recovery under tort theories such as negligence for purely economic loss based on the failure to perform contractual obligations. *Catalan v. GMAC Mortg. Corp.*,

---

[9]    *Nourish Info, Consent, HIPAA and Release Agreement*, Nourish, https://www.usenourish.com/nourish-consent (last visited Apr. 20, 2026).

24

629 F.3d 676, 693 (7th Cir. 2011). Economic losses are "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits without any claim of personal injury or damage to other property." *ExxonMobil Oil Corp. v. Amex Const. Co., Inc.*, 702 F. Supp. 2d 942, 967 (N.D. Ill. 2010).

The economic loss doctrine doesn't bar Plaintiffs' claim for two reasons. First, the alleged harms Plaintiffs suffered, loss of privacy and other emotional harms, are not pecuniary in nature and thus not barred by the economic loss doctrine. *Juenger v. Deaconess Health Sys.*, No. 3:24-CV-2332-NJR, 2025 U.S. Dist. LEXIS 193628, at *11 (S.D. Ill. Sep. 30, 2025); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022)). Second, the economic loss doctrine doesn't bar recovery if the duty arises outside of a contract. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). Plaintiffs haven't alleged the existence of an express contract. The existence of an implied contract doesn't displace the existence of a common-law duty to safeguard information. *See Flores*, 242 N.E.3d at 353-56 (recognizing the possibility of both a negligence claim and a breach of an implied contract claim). Plaintiffs have adequately alleged both the existence of an extra-contractual duty to take reasonable measures to protect private information from disclosure and non-economic harms. The economic loss doctrine doesn't bar the claim.

### c. The Complaint Adequately Alleges Harm

Nourish next argues that Plaintiffs fail to allege that they suffered any harm. Harm is an element of a negligence claim. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002). Plaintiffs allege that they suffered harm because of the disclosure of their appointment information. They lost privacy and received targeted ads. This is sufficient to confer standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (disclosure of private information has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."). It's also a sufficient injury for the purposes of a negligence claim. *See Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826, 828 (7th Cir. 2018) ("To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available . . . ."). Plaintiffs have adequately stated a negligence claim. The motion to dismiss this count is denied.

### 5. Count V – Implied Contract

A breach of an implied contract claim has the same elements as breach of an express contract claim. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022). A plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Babbitt Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016). An implied contract claim can be pleaded in the alternative to an express contract claim, but the existence of an express contract precludes an implied contract from governing the same subject matter. *Archon Constr. Co. v. U.S.*

26

*Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017). As explained above, Plaintiffs' complaint doesn't allege the existence of an express contract because Plaintiffs didn't have actual notice or reasonable notice of the privacy policy's terms.

The terms of an implied contract are inferred from the conduct of the parties. *Gociman*, 41 F.4th at 883. Plaintiffs allege that Nourish's collection of Plaintiffs' information created an implied contract to not disclose their information. This is a plausible allegation given Plaintiffs' relationship with Nourish and the need to disclose some information, the desire to schedule an appointment with a dietitian, that is at least plausibly sensitive. *See Wittmeyer v. Heartland All. for Hum. Needs & Rights*, No. 23 CV 1108, 2024 U.S. Dist. LEXIS 8803, at *15 (N.D. Ill. Jan. 17, 2024) (collecting similar cases).

Nourish argues that even if an implied contract exists, the complaint does not contain allegations that Plaintiffs suffered actionable damages. A breach of contract claim requires allegations that plaintiffs suffered an actual loss or measurable damages. *Ivey v. Transunion Rental Screening Sols., Inc.*, 186 N.E.3d 1076, 1085 (Ill. App. Ct. 2021). Diminution in value isn't cognizable under Illinois law. *Flores*, 242 N.E.3d at 356. Instead, "[m]oney out of pocket is a standard understanding of actual damages in contract law." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018).

In *Wittmeyer*, a data breach case, the district court found that plaintiffs failed to allege any contract damages and dismissed their breach of implied contract claim. 2024 U.S. Dist. LEXIS 8803, at *15-17. Plaintiffs attempt to distinguish

27

*Wittmeyer*. Plaintiffs argue that although *Wittmeyer* concerned the incidental disclosure of information, Nourish's disclosure was intentional. Plaintiffs say this indicates that they suffered an inherently economic injury. This argument is unavailing because the focus is on a plaintiff's alleged damages, not the reason for the breach. The only alleged damages in this case are the loss of privacy and the diminution of the value of Plaintiffs' personal information. Neither are actionable contract damages. *Flores*, 242 N.E.3d at 356; *Juenger*, 2025 U.S. Dist. LEXIS 193628, at *12. Accordingly, the motion to dismiss the implied contract claim is granted.

### 6. Count VI - Unjust Enrichment

Unjust enrichment is not a separate cause of action. It cannot stand on its own. *Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1090 (7th Cir. 2024). Instead, "it's a condition brought about by fraud *or other unlawful conduct.*" *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019) (emphasis added). Accordingly, Plaintiffs' unjust enrichment claim is tied to the fate of their other claims including the Wiretap Act claim. The statutory claim can move forward so the unjust enrichment claim can move forward as well. *Id.*

### IV. Conclusion

The motion to dismiss for lack of personal jurisdiction is denied. The motion to dismiss for failure to state a claim is granted in part and denied in part. Counts I, III, and V are dismissed without prejudice. Count II is terminated. Plaintiffs have until May 4, 2026, to file an amended complaint. If an amended complaint is not

28

filed by that date, the dismissals will automatically convert to dismissals with prejudice. Nourish must then answer the remaining portions of the complaint by May 20, 2026. If an amended complaint is filed, Nourish must respond by June 4, 2026. Regardless of whether an amended complaint is filed, by April 24, 2026, the parties must contact Magistrate Judge Schneider and schedule a Rule 26(f) conference. Discovery must commence. Generally, discovery shouldn't be stayed pending resolution of a motion to dismiss, absent unusual circumstances or well-recognized exceptions, such as immunity.


Entered: April 20, 2026                    By: _____

                                           Iain D. Johnston
                                           U.S. District Judge

29